1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   Claude M. Stern (Bar No. 96737)
2      claudestern@quinnemanuel.com
   Evette D. Pennypacker (Bar No. 203515)
3      evettepennypacker@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
4  Redwood Shores, California 94065
   Telephone:  (650) 801-5000
5  Facsimile:  (650) 801-5100

6  Attorneys for Plaintiff/Counterclaim Defendant
   Kraft Foods Holdings, Inc. and Third Party
7  Defendant Kraft Foods Global, Inc.

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  KRAFT FOODS HOLDINGS, INC.,              CASE NO. C 08-930 PJH

13                      Plaintiff,

14       v.

15  THE PROCTER & GAMBLE COMPANY,            **KRAFT'S NOTICE OF MOTION,
                                             MOTION AND MEMORANDUM OF
16                      Defendant.           POINTS AND AUTHORITIES IN
                                             SUPPORT OF MOTION FOR A STAY**
17

18  THE PROCTER & GAMBLE COMPANY,
                                             DATE:    April 9, 2008
19              Counterclaim Plaintiff,      TIME:    9:00 a.m.
                                             PLACE:   Courtroom 3, 17th Floor
20       v.                                  JUDGE:   Hon. Patricia J. Hamilton

21  KRAFT FOODS HOLDINGS, INC.

22              Counterclaim Defendant

23

24       and

25  KRAFT FOODS GLOBAL, INC.

26              Third-Party Defendant.

27

28

51282/2420187.5

KRAFT'S NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

## NOTICE OF MOTION AND MOTION

1

2    PLEASE TAKE NOTICE that on Wednesday, April 9, 2008 at 9:00 a.m. in the U.S.

3  District Court for the Northern District of California, located at 450 Golden Gate Avenue,

4  Courtroom 3, 17th Floor, San Francisco, California 94102, Plaintiff/Counterclaim Defendant Kraft

5  Foods Holdings, Inc. ("KFH") and Third Party Defendant Kraft Foods Global, Inc. ("KFG")

6  (collectively "Kraft"), will move this Court for an order to stay the present litigation pending (1)

7  the outcome of a currently-pending *inter partes* reexamination proceeding involving U.S. Patent

8  Number 7,169,418 ("'418 patent"), a virtually identical patent to the patent at issue in this lawsuit,

9  U.S. Patent Number 7,169,419 ("'419 patent"), and (2) the resumption of the virtually identical

10  stayed prior action pending in this Court entitled <u>The Procter & Gamble Company v. Kraft Foods</u>

11  <u>Global, Inc.</u>, Case No. C-07-04413-PJH ("the '418 patent litigation").

12    There are two bases for staying this litigation. First, the patent at issue -- the '419 patent --

13  is virtually identical to the '418 patent that currently is subject to reexamination proceedings. This

14  Court should stay the present litigation pending the outcome of the *inter partes* reexamination

15  proceeding because, among other reasons, the *inter partes* reexamination may dispose of all or

16  some of the asserted claims and otherwise narrow the issues the Court must determine.

17    Second, this litigation is duplicative of the prior pending '418 patent litigation involving

18  the same parties, the same issues and the same evidence. This Court already has issued an order

19  relating the two cases. Thus, this Court should stay the present litigation pending the resumption

20  of the '418 litigation. Litigating two separate actions that involve virtually identical patents with

21  virtually identical specifications and claims, as well as the same lead inventor and the same

22  prosecuting attorneys, alleging infringement based on the sale of the same accused product, is a

23  waste of the Court's and the parties' resources.

24    A stay of this litigation, pending resolution of the *inter partes* reexamination and/or

25  pending resumption of the '418 litigation, will conserve judicial resources, avoid potentially

26  conflicting decisions, and otherwise promote the efficient resolution of the parties' dispute.

27    This motion is supported by the accompanying Memorandum of Points and Authorities,

28  the pleadings and papers on file in this action, such other matters of which this Court may take

1  judicial notice including but not limited to all pleadings and papers on file in this Court in the

2  matter entitled <u>The Procter & Gamble Company v. Kraft Foods Global, Inc.</u>, Case No. C-07-

3  04413-PJH, any further evidence and argument that may be presented at or before the hearing and

4  the Declaration of Evette D. Pennypacker, and accompanying exhibits, filed contemporaneously

5  with this motion.

6  DATED:  March 5, 2008                    QUINN EMANUEL URQUHART OLIVER &
                                            HEDGES, LLP

7

8                                          By   //s//
9                                              Claude M. Stern
                                               Evette D. Pennypacker
10                                             Attorneys for Plaintiff/Counterclaim Defendant
                                               Kraft Foods Holdings, Inc. and Third Party
11                                             Defendant Kraft Foods Global, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**quinn emanuel**

51282/2420187.5

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

quinn emanuel

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................. 1

Procedural and Factual Background ......................................................................................... 2

    I.     P&G's '418 Lawsuit and Kraft's *Inter Partes* Reexamination ................................ 2

    II.    P&G's Motion for Preliminary Injunction and Kraft's Motion to Stay .................... 3

    III.   This Court Stays the '418 Litigation ....................................................................... 3

    IV.   The Current Duplicative '419 Litigation ................................................................ 4

    V.    The '418 and '419 Patents ...................................................................................... 5

Argument ................................................................................................................................... 7

I.    This Court Has Discretion And Authority To Stay This Litigation ................................... 7

II.   P&G Should Not Be Permitted To Avoid This Court's Prior Stay Order By
     Litigating A Duplicative Claim ........................................................................................ 7

III.  This Litigation Should Be Stayed Pending The '418 Patent Reexamination. ..................... 8

    A.   Patent Litigation Should Be Stayed Pending *Inter Partes* Reexaminations
        Of Relevant Patents. ............................................................................................. 8

    B.   A Stay Of This '419 Litigation Is Appropriate Even Though The '418
        Patent Is The Patent In Reexamination. ................................................................. 9

    C.   The '418 Reexamination Warrants Staying This Litigation. ................................... 10

        1.    A Stay Would Simplify The Issues And Avoid The Likelihood Of
           Inconsistent Results Or Wasted Effort. ..................................................... 10

        2.    Discovery Is Not Complete And No Trial Date Has Been Set. ................... 12

        3.    P&G Will Not Be Prejudiced By A Stay. .................................................... 13

IV.  This Case Should Be Stayed Because It Is Duplicative Of The '418 Litigation. ................ 14

    A.   This Court Has Authority And Discretion To Stay Duplicative Litigation. ............ 14

    B.   A Stay Will Promote Judicial Economy. ............................................................... 15

Conclusion ............................................................................................................................... 17

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

51282/2420187.5

# TABLE OF AUTHORITIES

**Page**

## Cases

ASCII Corp. v. STD Entm't USA, Inc.,
    844 F. Supp. 1378 (N.D. Cal. 1994) .................................................................................9, 13

Abtox, Inc. v. Exitron Corp.,
    131 F.3d 1009 (Fed. Cir. 1997) .............................................................................................11

Adams v. California Dept. of Health Servs.,
    487 F.3d 684 (9th Cir. 2007) ...............................................................................7, 14, 15, 16

American Life Ins. Co. v. Stewart,
    300 U.S. 203 (1937) ...............................................................................................................14

American Stock Exchange, LLC v. Mopex, Inc.,
    215 F.R.D. 87 (S.D.N.Y. 2002) ..............................................................................................8

Black & Decker, Inc. v. Robert Bosch Tool Corp.,
    500 F. Supp. 2d 864 (N.D. Ill. 2007) ....................................................................................8

Christianson v. Colt Indus. Operating Corp.,
    108 S. Ct. 2166 (1988) .....................................................................................................12, 13

Church of Scientology v. United States Dep't of the Army,
    611 F.2d 738 (9th Cir. 1979) ..................................................................................................7

Civix-DDI v. Expedia, Inc.,
    2005 WL 1126906 (N.D. Ill., May 2, 2005) .....................................................................8, 16

Datatreasury Corp. v. Wells Fargo & Co.,
    490 F. Supp. 2d 749 (E.D. Tex. 2006) ..................................................................................9

Elkway Mfg. Co. v. Ebco Mfg. Co.,
    192 F.3d 973 (Fed. Cir. 1999) ...............................................................................................11

Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,
    279 F.3d 1022 (Fed. Cir. 2002) .............................................................................................11

Ethicon, Inc. v. Quigg,
    849 F.2d 1422 (Fed. Cir. 1998) ..............................................................................................8

Gould v. Control Laser Corp.,
    705 F.2d 1340 (Fed. Cir. 1983) .......................................................................................8, 9, 13

KLA-Tencor Corp. v. Nanometrics, Inc.,
    2006 WL 708661 (N.D. Cal. Mar. 16, 2006) ...............................................................passim

Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,
    342 U.S. 180 (1952) .................................................................................................................7

-iv-

51282/2420187.5

M.C. Prods., Inc. v. AT&T Co.,
    205 F.3d 1351, 1999 WL 1253223 (9th Cir. Dec. 2, 1999) ................................. 7, 15

Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,
    58  F.3d 616 (Fed. Cir. 1995) ................................................................ 7, 8

Modine Mfg. Co. v. Delphi Automotive Sys., LLC,
    2000 WL 33989247 (E.D. Wis. Dec. 8, 2000) ............................................ 10, 11

Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.,
    2007 WL 627920 (N.D. Cal. Feb. 26, 2007) ............................................... 10

Norfin, Inc. v. IBM Corp.,
    625 F.2d 357 (10th Cir. 1980) ............................................................. 16

Pacesetter, Inc. v. Cardiac Pacemakers,
    2003 WL 23303473 (D.Minn. Nov. 19, 2003) ............................................. 9, 17

Pass & Seymour, Inc. v. Hubbell Inc.,
    2007 WL 2172648 (N.D.N.Y. 2007) ......................................................... 14

Pegasus Development Corp. v. Directv, Inc.,
    2003 WL 21105073 (D.Del. May 14, 2003) .................................................. 9

Perricone v. Unimed Nutritional Servs., Inc.,
    2002 WL 31075868 (D.Conn. July 18, 2002) ............................................ 13, 14

Richardson v. United States,
    841 F.2d 993 (9th Cir. 1988) ............................................................ 12, 13

Ricoh Co., Ltd. v. Aeroflex Inc.,
    2006 WL 3708069 (N.D. Cal. 2006) ........................................................ 12

Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.,
    572 F. Supp. 1210 (N.D. Ill. 1983) ........................................................ 16

Serlin v. Arthur Andersen & Co.,
    3 F.3d 221 (7th Cir. 1993) ................................................................. 8

Target  Therapeutics, Inc. v. SciMed Life Sys., Inc.,
    33 U.S.P.Q. 2d 2022 (N.D. Cal. 1995) ..................................................... 12

quinn emanuel

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

51282/2420187.5

1

**Preliminary Statement**

2      This lawsuit should be stayed.  This Court has already stayed litigation between The

3  Procter & Gamble Company ("P&G") and Kraft Foods Global, Inc. ("KFG") over KFG's plastic

4  39 ounce container for Maxwell House brand coffee because the only patent P&G asserted there,

5  U.S. Patent No. 7,169,418 ("'418 patent"), was the subject of a still-pending *inter partes*

6  reexamination proceeding before the PTO.  Specifically, this Court held:

7            [T]here is a high likelihood here that final, binding results of the
             reexamination proceedings at issue — which contemplate final decisions by
8            both the PBA and the Federal Circuit — would have a dramatic effect on
             the issues before the court.  This is particularly true if some or all of the
9            claims at issue are ultimately found invalid, or narrowed.  Indeed, based on
             this same understanding of inter partes reexamination proceedings, other
10           courts have recognized that an inter partes reexamination 'can have no
             other effect but to streamline ongoing litigation,' and that 'courts have an
11           even more compelling reason to grant a stay when an inter partes
             reexamination is proceeding with the same parties....So here...in addition to
12           the efficiency and streamlining of issues that would result from a stay, the
             court also notes that the pending litigation is at its earliest stages, thereby
13           reducing the prejudice that any party would suffer from a stay.
14           (Declaration of Evette D. Pennypacker ("Pennypacker Decl.") Ex. D.)

15     Despite this Court's October 11 stay order, P&G brought patent infringement
16
   counterclaims against KFG and a third party complaint against Kraft Foods Holdings, Inc.
17
   ("KFH") (collectively "Kraft") in a pending lawsuit between the parties in the Western District of
18
   Wisconsin accusing Kraft of infringing P&G's U.S. Patent No. 7,169,419 ("'419 patent").  The
19
   '419 patent is virtually identical to the '418 patent that is the subject of this Court's October 11
20
   stay order.  The '419 patent and the '418 patent were issued on the same day, share the same
21
   specification, relate back to the same provisional application and share substantially similar claim
22
   language.  In P&G's '419 countersuit, P&G seeks damages and an injunction against sales of the
23
   very same 39-ounce plastic Maxwell House® brand coffee container it accused of infringement in
24
   the '418 patent case.  The identity between P&G's '418 patent case in California and its '419
25
   patent countersuit in the Western District of Wisconsin led the Wisconsin court to sever and
26
   transfer the '419 patent claims to this Court.  Notably, that court held that "discovery concerning
27
   the '418 and '419 patents will be intertwined" and that
28

51282/2420187.5

-1-

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

the terms found in the '419 patent which are also found in the '418 patent
shall be construed to have the same meaning in both patents because they
both refer to the '338 patent application as their parent patent application .
. . . The requirement that the terms be construed to have the same
meaning in patents sharing a common ancestry means that separate
construction of the '419 patent's claims that contain terms used in the '418
patent's claims could lead to inconsistent claim construction and
inconsistent judgment concerning the patents. (Pennypacker Decl. Ex. L.)

In other words, the close relationship of the '418 and '419 patents means that there will be
substantially overlapping claim construction work, and the outcome of the pending *inter partes*
reexamination of the '418 patent will have a direct impact on the scope and meaning of the '419
patent claim terms. Accordingly, this Court should conserve the Court's and the parties' resources
and wait to litigate P&G's '419 patent case until reexamination of the '418 patent has finally
concluded. This is especially appropriate because P&G accuses the exact same Kraft product of
infringing both the '418 and the '419 patents. If the Court does not stay P&G's '419 patent suit,
there will be duplicative discovery and the possibility of inconsistent or duplicative damages
awards. The interests of justice and judicial economy point to staying P&G's '419 patent claims,
and Kraft's motion to stay those claims should be granted.

## Procedural and Factual Background

### I.    P&G's '418 Lawsuit and Kraft's *Inter Partes* Reexamination

P&G filed an action against KFG on August 27, 2007, entitled The Procter & Gamble
Company v. Kraft Foods Global, Inc., Case No. C-07-04413-PJH, alleging that KFG's sales of
Maxwell House® brand coffee sold in 39-ounce plastic containers infringed the '418 patent.
(Pennypacker Decl. Ex. A.)

The '418 patent issued on January 30, 2007. The next day, KFG filed a petition for an
*inter partes* reexamination of all 55 claims of the '418 patent . (Id. Ex. E.)[1] On June 7, 2007, the
PTO granted KFG's petition for *inter partes* reexamination and simultaneously issued an Action

---

[1]    The reexamination request ultimately was deemed filed on March 8, 2007. (Pennypacker
Decl. Ex. E.)

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

51282/2420187.5

quinn emanuel

1   Closing Prosecution ("ACP") confirming the reexamined claims. (Id.) On January 14, 2008, the

2   PTO issued a Right of Appeal Notice pursuant to 37 C.F.R. 1.953 (Manual of Patent Examining

3   Procedure § 2673.02).[2] (Id. Ex. F.) Kraft timely filed its appeal with the BPAI on February 14,

4   2008. (Id. Ex. G.)[3]

5   **II.    P&G's Motion for Preliminary Injunction and Kraft's Motion to Stay**

6           On September 14, 2007, before Kraft was permitted to file its appeal of the PTO's

7   confirmation of claims, P&G filed a preliminary injunction motion seeking to enjoin Kraft's sales

8   of Maxwell House brand coffee in 39-ounce plastic containers. (Id. Ex. C.)

9           On September 20, 2007, Kraft filed a motion for a stay or, in the alternative, for expedited

10  discovery and a continuance of the preliminary injunction hearing date. Kraft's request for a stay

11  was premised on the fact that the '418 patent was subject to the *inter partes* reexamination

12  proceeding that was not yet final.

13  **III.   This Court Stays the '418 Litigation**

14          On October 11, 2007, this Court issued an order imposing a stay pending the completion of

15  the '418 patent reexamination. (Id. Ex. D.) This Court found that "there is a high likelihood here

16  that final, binding results of the reexamination proceedings at issue . . . would have a dramatic

17  effect on the issues before the court." (Id. at 2:3-5.) This Court correctly reasoned that the reexam

18  "can have no other effect but to streamline ongoing litigation," and that "courts have an even more

19  compelling reason to grant a stay when an *inter partes* reexamination is proceeding with the same

20  parties . . . ." (Id. at lines 8-11.) This Court also noted that "the pending litigation is at its earliest

21  stages, thereby reducing the prejudice that any party would suffer from a stay." (Id. at 2:16-17.)

22  Thus, this Court granted the motion to stay, and ordered that "[i]n view of the court's grant of a

23  _____

24      [2]  Unlike the more common *ex parte* reexaminations, *inter partes* proceedings allow for
25  appeals to the Board of Patent Appeals and Interferences ("BPAI"), and subsequently to the
    Federal Circuit. See 35 U.S.C. §§ 134, 315.
26      [3]  On January 18, 2008, Kraft also filed with the PTO an *ex parte* reexamination request of the
    '418 patent. (Pennypacker Decl. Ex. H.) That request remains pending. (Id. ¶9.) Kraft
27  anticipates that this reexamination will be combined with the pending *inter partes* request and
    should not prolong the '418 reexamination proceedings.
28

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1   stay, [P&G's] pending motion for preliminary injunction is moot. The court accordingly

2   VACATES the current hearing date of October 24, 2007, and all corresponding briefing

3   deadlines." (Id. at 2:26-3:1.)

4       On November 9, 2007, P&G filed its Notice of Appeal of this Court's October 11, 2007

5   order. That appeal is pending.

6   **IV.**   **The Wisconsin, and Now Northern District of California, Duplicative '419 Litigation**

7       On October 26, 2007, KFH sued P&G in the Western District of Wisconsin, alleging

8   infringement of U.S. Patent No. 7,074,443 ('443 patent).[4]

9       P&G used Kraft's infringement action as its excuse to file a duplicative counterclaim and

10   third party complaint against KFH and KFG, alleging infringement of U.S. Patent No. 7,169,419

11   ("'419 patent"). (Pennypacker Decl. Ex. I.) P&G's '419 counterclaim, like its stayed '418 claim,

12   alleges infringement based on Kraft's sales of the same Maxwell House brand coffee sold in the

13   same 39-ounce plastic containers. Even P&G's contentions for why Kraft's 39-ounce plastic

14   containers infringe the '418 patent are virtually identical to P&G's contentions for why the same

15   containers infringe the '419 patent. (Cf. Pennypacker Decl. Ex. K (P&G's preliminary

16   infringement contentions in '419 case) with Ex. C (P&G's motion for preliminary injunction in

17   '418 case) at 8-13.)

18       P&G also has confirmed that many of the witnesses in the '418 action will be witnesses in

19   this action. Specifically, P&G has identified seven of the eight percipient witnesses who

20   submitted declarations in support of P&G's preliminary injunction motion filed in the '418

21   litigation (e.g., Zeik, Floyd, Roe, Gemeiner, Bello, Schmeller and Mills) as persons P&G believes

22   will be witnesses in this '419 action. (See id. Ex. K at 4.)

23       On November 29, 2007, Kraft filed a motion to dismiss the counterclaim and third party

24   complaint, or in the alternative, to stay the claims or transfer them to this District for consideration

25

26   [4] The '443 patent, entitled "Vented Can Overcap," is directed to a spacing structure placed in

the overcap of a coffee container to prevent the vent valve from becoming blocked. The '443

27   patent litigation, still pending and proceeding in the Western District of Wisconsin, is not at issue

here.

28

**quinn emanuel**

1  with P&G's '418 claims.  The basis for Kraft's motion was that P&G's claims for infringement of

2  the '419 patent were in all relevant respects identical to its claims for infringement of the '418

3  patent that had been stayed by this Court.  The Western District of Wisconsin agreed and granted

4  Kraft's motion, orderingP&G's counterclaim and third party complaint severed and transferred to

5  this District. (Pennypacker Decl. Ex. L.)  The court found that "[t]he facts and circumstances

6  surrounding P&G's counterclaim and third party claim for infringement of the '419 patent weigh

7  heavily in favor of transfer to conserve judicial resources," in part because "discovery concerning

8  the '418 and '419 patents will be intertwined" (id. at 9.) and also because of the "risk of

9  inconsistent claim construction and inconsistent judgments." (Id. at 10.)

10        On February 14, 2008, after P&G's '419 claims were transferred to this District, Kraft filed

11  a Motion for Administrative Relief to Determine Whether [the '418 and '419] Cases Should Be

12  Deemed Related."  This Court granted Kraft's motion by order dated February 27, 2008, finding

13  the two cases to be related.

14  **V.    The '418 and '419 Patents**

15        As the court in the Western District of Wisconsin already has found, the '418 patent is

16  nearly identical to the '419 patent asserted here.  Both patents are entitled, "Packaging System to

17  Provide Fresh Packed Coffee," and both are directed to a plastic package for roast and ground

18  coffee.  The '419 patent is a continuation-in-part of the same application that led to the '418

19  patent, and both patents claim to relate back to the same provisional application, No. 60/295,666.

20  Consequently, the specifications of the '418 and '419 patents are nearly identical.  (Compare id.,

21  Ex. B with Ex. J.)  The claim language also is virtually identical.  (Id.)  The yellow highlighting

22  below shows literally identical claim language and pink highlighting shows virtually identical

23  claim language:

| Claim No.'418 | '418 Claim Element | Claim No.'419 | '419 Claim Element |
|---|---|---|---|
| 1 | A packaging system comprising: | 1 | A packaging system comprising: |
| 1a | a container having a longitudinal axis and comprising a closed bottom, an open top, and a body having an enclosed perimeter between said bottom and said top; | 1a | a blow-molded container comprising a longitudinal axis, said blow-molded container further comprising a closed bottom, an open top, and a body having an enclosed perimeter between said bottom and said top; |

quinn emanuel

| | | | |
|---|---|---|---|
| 1b | wherein said bottom, top, and body together define an interior volume; | 1b | wherein said bottom, top, and body together define an interior volume |
| 1c | wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection; | 1c | wherein said body has at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection; |
| 1d | a protuberance continuously disposed around the perimeter of said body proximate to said top wherein said protuberance forms a ridge external to said body; | 1d | an outwardly facing annular protuberance disposed upon said body, said annular protuberance being continuously disposed around said perimeter of said body proximate to said top wherein said protuberance forms a surface external to said body, said surface being substantially perpendicular to said longitudinal axis; |
| 1e | a handle disposed on said body; | 8 | The packaging system of claim 1 wherein said body has a handle disposed thereon. |
| 1f | and a flexible closure removably attached and sealed to said protuberance; | 1e | and, a flexible closure removably attached and sealed to said annular protuberance; |
| 1g | wherein said bottom and said body are constructed from a material having a tensile modulus number ranging from at least about 35,000 pounds per square inch (2,381 atm) to at least about 650,000 pounds per square inch (4,230 atm); | 18 | The packaging system of claim 17 wherein said blow-molded container is manufactured from a material having a tensile modulus ranging from at least about 35,000 pounds per square inch (2,381 atm) to at least about 650,000 pounds per square inch (4,230 atm). |
| 1h | wherein said container has a top load capacity of at least about 16 pounds (7.3 kg); | 17f | wherein said annular protuberance translates the force of a load of at least about 16 pounds disposed upon said packaging system in a direction substantially parallel to said longitudinal axis and wherein coffee is contained within said packaging system. |
| 1i | and wherein said closure has a one-way valve disposed thereon. | 4 | The packaging system of claim 1 wherein said flexible closure has a one-way valve disposed thereon. |

Both P&G's '418 litigation and this '419 litigation seek to enjoin sales of the same Maxwell House brand coffee in the same 39-ounce plastic containers, and to recover damages for the same allegedly infringing sales.  (Compare id. Ex. C at 8-13 with Ex. K's "exhibit A".)

51282/2420187.5

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

**Argument**

I.    **This Court Has Discretion And Authority To Stay This Litigation.**

"It is well recognized that a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases." M.C. Prods., Inc. v. AT&T Co., 205 F.3d 1351, 1999 WL 1253223, at *1 (9th Cir. Dec. 2, 1999). That inherent power includes the ability to stay litigation upon whatever terms are appropriate. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952); Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 749 (9th Cir. 1979).

II.    **P&G Should Not Be Permitted To Avoid This Court's Prior Stay Order By Litigating A Duplicative Claim.**

P&G could have brought its '419 infringement claim against Kraft at the same time it brought its '418 infringement claim. P&G's "we win even if we lose" gaming strategy has all along been to seek enforcement of its '418 patent in this Court, and when that action was predictably stayed, because the '418 was in reexam, to seek enforcement of its closely-related '419 patent in another court. This Court need not, and should not, tolerate this sort of gamesmanship.

P&G was "required to bring at one time all of the claims against a party or privies relating to the same transaction or event." Adams, 487 F.3d at 693. This is because "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Adams, 487 F.3d at 688 (internal quotation marks omitted). "It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together." Mars Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 619 (Fed. Cir. 1995) This is particularly true when a plaintiff chooses to bring two separate actions against two parties based on the exact same alleged acts. Id. at 620.

P&G's duplicative lawsuit is especially egregious because it represents an obvious attempt by P&G to avoid the effects of this Court's stay ruling. Numerous cases hold that plaintiffs should

1  not be allowed to avoid an adverse ruling in an earlier filed action by filing a duplicative action in

2  another forum. See, e.g., Black & Decker, Inc. v. Robert Bosch Tool Corp., 500 F. Supp. 2d 864,

3  872-73 (N.D. Ill. 2007) (dismissing second filed action involving same patent claims against new

4  products where new products were precluded from first filed action); Civix, 2005 WL 112906, at

5  *5 (holding plaintiff did not have "the right to assert new patent claims against Defendants merely

6  because the Court issued its Markman ruling").[5]

7       There is no justification for P&G's attempt to bring a duplicative claim in Wisconsin

8  simply so it could avoid of this Court's ruling imposing a stay. Now that P&G's claim is back in

9  this District where it belongs, this Court should refuse to reward P&G's gamesmanship and

10  instead stay this litigation pending the resolution of the prior pending '418 litigation.

11  **III.    This Litigation Should Be Stayed Pending The '418 Patent Reexamination.**

12       **A.    Patent Litigation Should Be Stayed Pending *Inter Partes* Reexaminations Of
             Relevant Patents.**

13

14       It is especially appropriate to invoke this Court's inherent authority to stay patent litigation

15  pending *inter partes* patent reexamination proceedings. See Gould v. Control Laser Corp., 705

16  F.2d 1340, 1341 (Fed. Cir. 1983); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir.

17  1998). District courts should adhere to a "liberal policy in favor of granting motions to stay

18  proceedings pending the outcome of USPTO reexamination or reissue proceedings." ASCII Corp.

19  v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). A court should stay an

20  infringement case based upon a parallel reexamination in order to avoid inconsistent results,

21  _____

22  [5]  The policy against the kind of gamesmanship employed by P&G is so strong that this Court
     would be within its discretion to dismiss this lawsuit, let alone stay it. "Courts have consistently
23  held that a plaintiff is barred from asserting a patent in a subsequent action against products or
     processes if that patent could have been asserted in the prior action." American Stock Exchange,
24  LLC v. Mopex, Inc., 215 F.R.D. 87, 92 (S.D.N.Y. 2002). In fact, a duplicative action may be
     dismissed even where the plaintiff will face adverse consequences as a result. In Serlin, for
25  example, the plaintiff's first action was in danger of being dismissed for untimely service, and the
     statute of limitations would have barred it from being re-filed. Nevertheless, the Seventh Circuit,
26  expressly noting this negative consequence, still affirmed the district court's decision to dismiss
     the second action as duplicative of the first. See Serlin v. Arthur Andersen & Co., 3 F.3d 221, 224
27  (7th Cir. 1993).

28

51282/2420187.5

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources. See Gould., 705 F.2d at 1342.

**B.      A Stay Of This '419 Litigation Is Appropriate Even Though The '418 Patent Is The Patent In Reexamination.**

The only difference between this litigation and the '418 litigation that this Court stayed is that the patent at issue here is a nominally different patent than the '418 patent in reexamination. Given the overwhelming similarity between the two patents, however, that is a distinction without a difference.

When, as is the case here, plaintiff's patent is pending PTO reexamination, courts routinely stay independent infringement litigation based on <u>unexamined but related patents</u>. <u>See</u>, <u>e.g.</u>, <u>Pacesetter, Inc. v. Cardiac Pacemakers</u>, No. Civ. 02-1337, 2003 WL 23303473, at *3 (D.Minn. Nov. 19, 2003) (entire proceeding stayed where two of four patents in suit underwent reexamination, and expressly rejecting "the alternative of proceeding ahead with the patents that are not under reexamination"); <u>KLA-Tencor Corp. v. Nanometrics, Inc.</u>, No. C. 05-03116, 2006 WL 708661, at *4 (N.D. Cal. Mar. 16, 2006) (stay granted where reexamination of two patents in suit "may significantly affect the [third patent in suit]"); <u>Pegasus Development Corp. v. Directv, Inc.</u>, No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at *3 (D.Del. May 14, 2003) (stay granted where reexamination of one of two patents in suit "may materially affect the issues in the case...."); <u>Datatreasury Corp. v. Wells Fargo & Co.</u>, 490 F. Supp. 2d 749 (E.D. Tex. 2006) (stay granted where PTO commenced reexamination of some of the patents in suit).

For example, in <u>Modine Mfg. Co. v. Delphi Automotive Sys., LLC</u>, No. 00-C258, 2000 WL 33989247 (E.D. Wis. Dec. 8, 2000), the defendant brought a motion to stay patent litigation pending an appeal to the Federal Circuit of the rejection of a different patent application. The district court granted the stay motion because the claims on appeal were "strikingly similar in their wording, and the relevant illustrations [were] identical" to the patent at issue. <u>Id</u>. at *1. Even though the appeal arguably presented "different issues," the district court held that "the federal circuit's decision need not conclusively settle every question in the instant case; to justify a stay,

51282/2420187.5

1   there only needs to be a likelihood that the decision will shed light upon and simplify the issues

2   presented here." Id.

3       **C.    The '418 Reexamination Warrants Staying This Litigation.**

4       In determining whether to grant a stay pending reexamination, this Court should consider:

5   (1) whether a stay will simplify the issues and trial of the case; (2) whether discovery is complete

6   and whether a trial date has been set; and (3) whether a stay would unduly prejudice or present a

7   clear tactical disadvantage to the non-moving party. See Nanometrics, Inc. v. Nova Measuring

8   Instruments, Ltd., No. C-06-2252 SBA, 2007 WL 627920, at *2 (N.D. Cal. Feb. 26, 2007).  Here,

9   each of the factors is met, and the interests of justice would plainly be served by granting a stay.

10      **1.    A Stay Would Simplify The Issues And Avoid The Likelihood Of
                Inconsistent Results Or Wasted Effort.**

11

12      Kraft's appeal of the PTO's reexamination decision to the BPAI is pending and is not yet

    final.  (Pennypacker Decl. ¶8.)  Allowing the reexamination to run its course before moving
13
    forward with the present litigation will simplify the issues for the Court to consider and may even
14
    render the entire litigation moot.  See Nanometrics, 2007 WL 627920, at *3. ("Waiting for the
15
    outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if
16
    the claims survive, facilitate the trial by providing the Court with the opinion of the USPTO and
17
    clarifying the scope of the claims.").
18
        These are exactly the considerations that led this Court to conclude that "there is a high
19
    likelihood here that final, binding results of the reexamination proceedings at issue -- which
20
    contemplate final decisions by both the [BPAI] and the Federal Circuit -- would have a dramatic
21
    effect on the issues before the court."  (Pennypacker Decl. Ex. D at 2:3-5.)  This Court also noted
22
    that "other courts have recognized that an *inter partes* reexamination 'can have no other effect but
23
    to streamline ongoing litigation,' and that 'courts have an even more compelling reason to grant a
24
    stay when an *inter partes* reexamination is proceeding with the same parties . . . .'"  (Id. at 2:8-11.)
25
        This is true even though it is the '418 patent and not the '419 patent that is in
26
    reexamination because the reexamination of the '418 patent will simplify the issues this Court
27
    needs to resolve relative to the '419 patent.  See, e.g., Modine Mfg. Co., 2000 WL 33989247, at
28

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1  *1 (granting stay of patent litigation because Federal Circuit appeal of different patent application

2  would simply issues pending before the court). Even if the '418 claims are confirmed in whole or

3  in part in reexamination, those proceedings still will have a direct impact on the '419 patent's

4  scope and validity. The Federal Circuit has repeatedly held that "the same term[s] and phrase[s]

5  should be interpreted consistently where it appears in claims of common ancestry." Epcon Gas

6  Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1030 (Fed. Cir. 2002); see also Elkway Mfg.

7  Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999); Abtox, Inc. v. Exitron Corp., 131 F.3d

8  1009, 1010 (Fed. Cir. 1997). The '419 is a continuation-in-part of the '418 patent and the patents

9  share a common provisional application. The claim language in both patents is virtually identical.

10 The BPAI, and possibly the Federal Circuit thereafter, will necessarily determine the scope and

11 meaning of the many '419 patent claims terms common to both patents, such as "protuberance,"

12 "region of deflection," "flexible closure," etc. The meaning of those terms must be the same in

13 both patents; thus, the interpretation of such terms in the '418 reexamination is directly relevant to

14 the meaning of the '419 patent. KLA-Tencor Corp., 2006 WL 708661, at *4 (overlap of claim

15 language factor in favor of stay).

16      Accordingly, the Wisconsin court already held, "[t]he Federal Circuit has explained that in

17 construing a term found in claims in separate patents that were formed from a parent patent

18 application it would be improper to construe [the] term differently in one patent than another,

19 given their common ancestry," and concluded that the law "requires that the terms found in the

20 '419 patent which are also found in the '418 patent shall be construed to have the same meaning in

21 both patents . . . ." (Pennypacker Decl. Ex. L at 10 (internal quotation marks omitted).) Thus, the

22 court  (Id.) The findings of the Wisconsin court are "law of the case" and this Court should not

23 revisit them. Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988). The law of the case

24 doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's

25 own decisions . . . . Federal courts routinely apply law-of-the-case principles to transfer decisions

26 of coordinate courts . . . . Indeed, the policies supporting the doctrine apply with even greater

27 force to transfer decisions than to decisions of substantive law . . . ." Christianson v. Colt Indus.

28 Operating Corp., 108 S.Ct. 2166, 2177-78 (1988).

quinn emanuel

1     Waiting for the reexamination to resolve also will avoid the possibility of inconsistent

2  decisions from the PTO or BPAI or Federal Circuit and this Court. Ricoh Co., Ltd. v. Aeroflex

3  Inc., 2006 WL 3708069, *5 (N.D. Cal. 2006) (granting stay in part because it was "possible that

4  this Court and the PTO could reach inconsistent conclusions regarding the same patent"). The

5  Western District of Wisconsin agreed, holding that litigating the '419 claims separately from the

6  '418 claims poses "a risk of inconsistent claim construction and inconsistent judgments."

7  (Pennypacker Decl. Ex. N at 10.)

8         **2.    Discovery Is Not Complete And No Trial Date Has Been Set.**

9     "In addition to the efficiency and streamlining of issues that would result from a stay, the

10  court also notes that the pending litigation is at its earliest stages, thereby reducing the prejudice

11  that any party would suffer from a stay." (Pennypacker Decl. Ex. D at 2:15-17.)  Although a

12  certain amount of limited discovery has begun in the '419 case, and the parties have exchanged

13  preliminary proposed constructions of certain terms in the '419 patent, discovery is far from

14  complete.  No depositions have been noticed by either party.  No expert reports have been

15  exchanged (nor experts disclosed).  No Markman hearing has been ordered and no trial date has

16  been set.  The parties have not had a Rule 26 conference to discuss the discovery plan since this

17  matter was transferred to this District.  The relatively nascent discovery in this case also favors a

18  stay.  See, e.g., Nanometrics, 2007 WL 627920, at *2 (granting stay requested nine months after

19  suit because although "[d]iscovery has commenced . . . . it has not proceeded" significantly);

20  KLA-Tencor, 2006 WL 708661, at *2 (granting stay where "discovery has just begun"); Target

21  Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995) (same);

22  ASCII, 844 F. Supp. at 1381 (same).

23     In fact,

24             [s]ome courts have granted stays pending re-examination
               proceedings notwithstanding the well-developed posture of the
25             litigation. See, e.g., Gould, 705 F.3d 1340 (stay granted five years
               after commencement of litigation and 20 days before scheduled trial
26             date); Loffland Brothers Co v. Mid-western Energy Corp., 225
               U.S.P.Q. 886 (W.D.Okla.1985) (stay granted after substantial
27             discovery, pre-trial conference, and scheduled trial date); Emhart, 3
               U.S.P.Q.2d 1889 (stay granted 18 months after significant
28             discovery, but no trial preparation); Grayling Industries, Inc. v.

quinn emanuel

51282/2420187.5

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1    GPAC, Inc., 19 U.S.P.Q.2d 1872, 1873 (N.D.Ga.1991) (stay granted

2    with discovery completed and only trial remaining in case).

3    Perricone v. Unimed Nutritional Servs., Inc., 2002 WL 31075868, at *3 n.1 (D.Conn. July 18,

     2002).

4

5                3.      **P&G Will Not Be Prejudiced By A Stay.**

6         P&G will not suffer any litigation prejudice as a result of a stay.  Although the parties have

7    exchanged limited discovery in this case, as of the date of this motion, no depositions have been

8    taken and no expert reports have been prepared.  Notably, P&G has not moved for a preliminary

9    injunction in this case (nor could it, eight months after Kraft first introduced its allegedly

10   infringing products), so P&G cannot argue that it will suffer irreparable harm from a stay.  In fact,

11   P&G well knows, and Kraft is prepared to provide evidence of the fact that, P&G has not suffered

12   any injury, much less irreparable injury, as a result of Kraft's introduction of its plastic 39-ounce

13   Maxwell House brand container.  If P&G's infringement allegations are correct, it can seek

14   damages for any such infringement after the validity and scope of the '418 and '419 patents are

15   finally determined.  This is precisely what the Western District of Wisconsin found when it

16   transferred this case to this District:  "P&G . . . does not elaborate why docket speed is necessary

17   in this case.  It is not disputed that the parties sell competing coffee containers but P&G does not

18   explain why it could not be readily compensated by a reasonable royalty."  (Pennypacker Decl.

19   Ex. L at 8-9.)  These determinations are law of the case and should not be disturbed.  Richardson,

20   841 F.2d at 996; Christianson, 108 S.Ct. at 2177-78.

21        Moreover, even if P&G had moved (or does move) for a preliminary injunction in this

22   case, an allegation of "irreparable harm" is not the relevant prejudice in the context of a stay.  "A

23   stay of litigation may be appropriate, pending PTO reexamination, even in a case where a

24   preliminary injunction motion has been made."  Pass & Seymour, Inc. v. Hubbell Inc., 2007 WL

25   2172648, at *12 (N.D.N.Y. 2007).  Kraft's motion requires the Court to consider "whether a stay

26   would unduly prejudice or present a clear tactical disadvantage to the non-moving party."

27   Nanometrics, 2007 WL 627920, at *2.  There is no authority for equating allegations of

28   irreparable harm with "undue prejudice" and "tactical disadvantage" because those latter standards

quinn emanuel

51282/2420187.5

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1   are used to deny stays due to "the late stage of litigation, the fact that discovery was or would be

2   almost completed, or trial had been set." <u>Perricone v. Unimed Nutritional Servs., Inc.</u>, 2002 WL

3   31075868 (D.Conn. July 18, 2002). None of those factors are present here. P&G has not spent

4   any significant time or resources on discovery, motion practice or other activities related to this

5   lawsuit. <u>See</u> <u>KLA-Tencor</u>, 2006 WL 708661, at *3 ("Granting a stay does not cause the

6   nonmoving party undue prejudice when that party has not invested substantial expense and time in

7   the litigation."); <u>Nanometrics</u>, 2007 WL 627920, at *2 (noting that "the early stage of litigation

8   weighs in favor of a stay"). When imposing a stay of the '418 litigation, this Court correctly

9   recognized that the early stage of litigation would reduce any prejudice that P&G might allege.

10   (Pennypacker Decl. Ex. D at 2:15-17.)

11   **IV.    This Case Should Be Stayed Because It Is Duplicative Of The '418 Litigation.**

12        Independent of staying this case pending the reexamination of the '418 patent, this case

13   should be stayed for the simple reason that it should be litigated and tried together with the '418

14   case to promote judicial economy. Because the '418 case already is stayed, granting a stay here

15   would preserve this Court's and the parties' resources generally, including those associated with

16   claim construction.

17       **A.    This Court Has Authority And Discretion To Stay Duplicative Litigation.**

18        This Court "may exercise its discretion to dismiss a duplicative later-filed action [or] to

19   stay that action pending resolution of the previously filed action . . . ." <u>Adams v. California Dept.</u>

20   <u>of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. 2007); <u>see also</u> <u>American Life Ins. Co. v. Stewart</u>,

21   300 U.S. 203, 215 (1937) ("A court has control over its own docket . . . . In the exercise of a

22   sound discretion it may hold one lawsuit in abeyance to abide the outcome of another, especially

23   where the parties and the issues are the same."); <u>M.C. Prods.</u>, 1999 WL 1253223, at *1 (9th Cir.

24   Dec. 2, 1999) ("[A] district court has discretion to transfer, stay, or dismiss an action whenever it

25   is duplicative of a parallel action already pending . . . .").

26       "In a situation such as here, where one district court had duplicative suits

27   contemporaneously pending on its docket, we conclude, as did the Supreme Court in an analogous

28   situation, that '[n]ecessarily, an ample degree of discretion, appropriate for disciplined and

quinn emanuel

-14-

1  experienced judges, must be left to the lower court[].'" Adams, 487 F.3d at 692 (quoting Kerotest

2  Mfg. Co., 342 U.S. at 183-84).

3  **B.    A Stay Will Promote Judicial Economy.**

4       "[A] suit is duplicative if the claims, parties, and available relief do not significantly differ

5  between the two actions." M.C. Prods., 1999 WL 1253223, at *1 (quoting Serlin v. Arthur

6  Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993)).  The claims, parties and available relief in this

7  action are virtually identical with the claims, parties and available relief in the '418 litigation.

8       The relief P&G seeks in both cases is identical:  damages from, and enjoining, sales of

9  Maxwell House brand coffee sold in 39-ounce plastic containers.  The claims also are identical

10 because the '418 and '419 patents themselves are virtually identical.  Both patents are directed to a

11 plastic package for roast and ground coffee, share the same primary inventor, share the same

12 primary examiner, share the same prosecuting attorneys, share many of the same cited references

13 and relate back to the same provisional application.  The specification and claim language also are

14 nearly identical.  Thus, the infringement analysis for the '418 and '419 patents will be nearly

15 identical.

16      Moreover, in the Ninth Circuit, "[t]o ascertain whether successive causes of action are the

17 same, we use the transaction test . . . .  Whether two events are part of the same transaction or

18 series depends on whether they are related to the same set of facts and whether they could

19 conveniently be tried together." Adams, 487 F.3d at 689 (internal quotation marks omitted).  The

20 '418 and '419 cases easily meet this test because they both allege infringement by the same

21 accused Kraft product.  Based on the overwhelming identity of evidence (inventors, prosecuting

22 attorneys, relevant documents, etc.), there can be little argument that the two cases relate to the

23 same set of facts and could conveniently be tried together.[6]

24

25      [6]  It makes no difference that distinct patents give rise to separately enforceable property

26 rights, because even if two suits implicate "distinct rights enforceable by litigants, this factor alone
   does not differentiate causes of action." Adams, 487 F.3d at 691.  For example, different claims of

27 a single patent also involve separate property rights (see, e.g., Norfin, Inc. v. IBM Corp., 625 F.2d

28 357, 362 (10th Cir. 1980), but separate claims of a single patent still may be subject to claim
          (footnote continued)

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

1    The parties in the two cases also are the same.  P&G is the plaintiff in both, and KFG is a

2 defendant in both.  The only difference with this litigation is that P&G added KFH, a wholly-

3 owned subsidiary of KFG, as a party.[7]  However, "[g]iven the equitable nature of considerations

4 related to the wise administration of the federal court system, a rigid, mechanical application of

5 the rules and standards is to be eschewed."  <u>Ridge Gold Standard Liquors v. Joseph E. Seagram &</u>

6 <u>Sons, Inc.</u>, 572 F. Supp. 1210, 1214 (N.D. Ill. 1983) (finding sufficient identity of parties even

7 though the plaintiffs in the two actions were "separately incorporated" and had "separate legal

8 existences").  The addition of KFH to this lawsuit is irrelevant because of the close relationship

9 between KFH and KFG and because there was "an identity of interests and adequate

10 representation" in the prior lawsuit.  <u>Adams</u>, 487 F.3d at 691.

11    The accused product, witnesses, technology and other evidence related to P&G's '418

12 action and this '419 action are virtually identical.  Thus, it is a near certainty that the "engineering

13 and sales personnel deposed would be the same for [both patents]."  <u>KLA-Tencor Corp.</u>, 2006 WL

14 708661, at *4.  Because the same accused product is at issue and P&G seeks injunctive and

15 monetary damages in both cases, the damages analysis for the '419 and '418 patents will also be

16 identical.

17    These are exactly the considerations that favor staying patent litigation in light of a

18 pending reexamination of a different patent:  the overlap of accused products, witnesses,

19 technology and evidence.  <u>See</u> <u>Pacesetter</u>, 2003 WL 23303473, at *3; <u>KLA-Tencor Corp.</u>, 2006

20 WL 708661, at *4.

21    In sum, a stay is appropriate here because "any fair scrutiny of the record in this case

22 compels the conclusion that the [two] patents in question, although unrelated, are inextricably

23 intertwined.  There is no discernable demarcation of issues, experts, or products.  In addition,

24

25 preclusion; that is, they may be considered sufficiently related that the second action may be

26 dismissed with prejudice, not to mention stayed.  <u>See, e.g.</u>, <u>Civix-DDI v. Expedia, Inc.</u>, No. 04 C
8031, 2005 WL 1126906, at *4 (N.D. Ill., May 2, 2005).

27 [7]  P&G's infringement claim against KFH is based entirely on specious alter ego allegations,

28 which KFH disputes.

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

51282/2420187.5

quinn emanuel

1    duplicity and overlap will occur when addressing issues such as experts, discovery, damages, and

2    products." Pacesetter, 2003 WL 23303473, at *1.

3    Without a stay, not only will resources be wasted by having this Court twice consider the

4    exact same issues, but conflicting outcomes also may result. If this Court moves forward with

5    P&G's '419 infringement claim, this Court's claim construction, validity and infringement

6    determinations could not only conflict with the PTO, the BPAI and/or the Federal Circuit, but also

7    with decisions later made in the '418 action.[8] Going forward with P&G's '419 infringement claim

8    when the virtually identical '418 case has been stayed would be a waste of the party's and this

9    Court's resources.

10   The Western District of Wisconsin transferred this case to this District precisely because it

11   determined that litigating the case together with the '418 litigation would serve judicial economy.

12   The court found that the overlapping nature of the '418 litigation and this case "weigh heavily in

13   favor of transfer to conserve judicial resources . . . ." (Pennypacker Decl. Ex. L at 9.) The court

14   further found that "discovery concerning the '418 and '419 patents will be intertwined . . . .

15   Accordingly, coordinating discovery in one district would promote efficiency among the parties as

16   well as avoid the duplication of discovery among the parties concerning related patents." (Id. at

17   10.)

18   Because this litigation is clearly duplicative with the prior, pending '418 litigation, this

19   case should be stayed pending the resolution of the earlier lawsuit. At a minimum, this case

20   should be stayed until the stay of the '418 litigation is lifted so that the two actions may be

21   litigated together and the Court and the parties can benefit from the obvious judicial economy.

## Conclusion

23   For all of the foregoing reasons, Kraft respectfully requests that this Court stay this

24   litigation, pending resolution of the *inter partes* and *ex parte* reexaminations of the '418 patent

25   and the resumption of the '418 litigation pending in this Court.

26   _____

27   [8] P&G might be barred by collateral estoppel or otherwise from later contesting in the '418

28   case the findings made in this case.

quinn emanuel

1

2  DATED:  March 5, 2008                    Respectfully submitted,

3                                           QUINN EMANUEL URQUHART OLIVER &
                                            HEDGES, LLP
4

5                                           By  //s//
6                                                Claude M. Stern
                                                 Evette D. Pennypacker
7                                                Attorneys for Plaintiff/Counterclaim Defendant
                                                 Kraft Foods Holdings, Inc. and Third Party
8                                                Defendant Kraft Foods Global, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**quinn emanuel**

-18-

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH