

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Claude M. Stern (Bar No. 96737)
2        claudestern@quinnemanuel.com
      Evette D. Pennypacker (Bar No. 203515)
3        evettepennypacker@quinnemanuel.com
    555 Twin Dolphin Drive, Suite 560
4   Redwood Shores, California 94065
    Telephone:  (650) 801-5000
5   Facsimile:  (650) 801-5100

6   Attorneys for Plaintiff/Counterclaim Defendant
    Kraft Foods Holdings, Inc. and Third Party
7   Defendant Kraft Foods Global, Inc.

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  KRAFT FOODS HOLDINGS, INC.,          CASE NO. C 08-930 PJH

13                    Plaintiff,

14        v.

15  THE PROCTER & GAMBLE COMPANY,        **KRAFT'S NOTICE OF MOTION,
                                         MOTION AND MEMORANDUM OF
16                    Defendant.         POINTS AND AUTHORITIES IN
                                         SUPPORT OF MOTION FOR A STAY**
17

18  THE PROCTER & GAMBLE COMPANY,

19                    Counterclaim Plaintiff,

20        v.

21

22  KRAFT FOODS HOLDINGS, INC.

23                    Counterclaim Defendant

24        and

25  KRAFT FOODS GLOBAL, INC.

26                    Third-Party Defendant.

27

28

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................1

Procedural and Factual Background ....................................................................................2

     I.     P&G's '418 Lawsuit and Kraft's *Inter Partes* Reexamination ..............................2

     II.    P&G's Motion for Preliminary Injunction and Kraft's Motion to Stay...................3

     III.   This Court Stays the '418 Litigation...................................................................3

     IV.   The Current Duplicative '419 Litigation............................................................4

     V.    The '418 and '419 Patents ................................................................................5

Argument ............................................................................................................................7

I.     This Court Has Discretion And Authority To Stay This Litigation. ..........................7

II.    P&G Should Not Be Permitted To Avoid This Court's Prior Stay Order By Litigating A Duplicative Claim. ................................................................................7

III.   This Litigation Should Be Stayed Pending The '418 Patent Reexamination. ...........8

     A.    Patent Litigation Should Be Stayed Pending *Inter Partes* Reexaminations Of Relevant Patents. ...........................................................8

     B.    A Stay Of This '419 Litigation Is Appropriate Even Though The '418 Patent Is The Patent In Reexamination. ......................................................9

     C.    The '418 Reexamination Warrants Staying This Litigation..........................10

          1.    A Stay Would Simplify The Issues And Avoid The Likelihood Of Inconsistent Results Or Wasted Effort.........................................10

          2.    Discovery Is Not Complete And No Trial Date Has Been Set. ..................12

          3.    P&G Will Not Be Prejudiced By A Stay. ................................................13

IV.   This Case Should Be Stayed Because It Is Duplicative Of The '418 Litigation. ...............14

     A.    This Court Has Authority And Discretion To Stay Duplicative Litigation............15

     B.    A Stay Will Promote Judicial Economy................................................................15

Conclusion .........................................................................................................................18

51282/2420187.6

quinn emanuel

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>                                                                 **Page**

<u>ASCII Corp. v. STD Entm't USA, Inc.</u>,
    844 F. Supp. 1378 (N.D. Cal. 1994) ....................................................9, 13

<u>Abtox, Inc. v. Exitron Corp.</u>,
    131 F.3d 1009 (Fed. Cir. 1997)...........................................................11

<u>Adams v. California Dept. of Health Servs.</u>
    487 F.3d 684 (9th Cir. 2007) ..............................................................7, 15

<u>American Life Ins. Co. v. Stewart</u>,
    300 U.S. 203 (1937)............................................................................15

<u>American Stock Exchange, LLC v. Mopex, Inc.</u>,
    215 F.R.D. 87 (S.D.N.Y. 2002) ..........................................................8

<u>Black & Decker, Inc. v. Robert Bosch Tool Corp.</u>,
    500 F. Supp. 2d 864 (N.D. Ill. 2007)...................................................8

<u>Christianson v. Colt Indus. Operating Corp.</u>,
    108 S. Ct. 2166 (1988) ........................................................................12, 14

<u>Church of Scientology v. United States Dep't of the Army</u>,
    611 F.2d 738 (9th Cir. 1979) ..............................................................7

<u>Civix-DDI v. Expedia, Inc.</u>,
    No. 04 C 8031, 2005 WL 1126906 (N.D. Ill., May 2, 2005) ..............8, 9

<u>Datatreasury Corp. v. Wells Fargo & Co.</u>,
    490 F. Supp. 2d 749 (E.D. Tex. 2006) ................................................9

<u>Elkway Mfg. Co. v. Ebco Mfg. Co.</u>,
    192 F.3d 973 (Fed. Cir. 1999)..............................................................11

<u>Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.</u>,
    279 F.3d 1022 (Fed. Cir. 2002)............................................................11

<u>Ethicon, Inc. v. Quigg</u>,
    849 F.2d 1422 (Fed. Cir. 1998) ...........................................................11

<u>Gould v. Control Laser Corp.</u>,
    705  F.2d 1340 (Fed. Cir. 1983).........................................................8, 9, 13

<u>KLA-Tencor Corp. v. Nanometrics, Inc.</u>,
    No. C. 05-03116, 2006 WL 708661 (N.D. Cal. Mar. 16, 2006)...................*passim*

<u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>,
    342 U.S. 180 (1952) ............................................................................7

<u>M.C. Prods., Inc. v. AT&T Co.</u>,
    205 F.3d 1351, 1999 WL 1253223 (9th Cir. Dec. 2, 1999) ...............7, 15

quinn emanuel

Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,
    58 F.3d 616 (Fed. Cir. 1995) ...................................................................................8

Modine Mfg. Co. v. Delphi Automotive Sys., LLC,
    No. 00-C258, 2000 WL 33989247 (E.D. Wis. Dec. 8, 2000) ......................................10, 11

Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.,
    No. C-06-2252 SBA, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007)........................ 10, 12, 14

Norfin, Inc. v. IBM Corp.,
    625 F.2d 357 (10th Cir. 1980) .............................................................................16

Pacesetter, Inc. v. Cardiac Pacemakers,
    No. Civ. 02-1337, 2003 WL 23303473 (D.Minn. Nov. 19, 2003) ...................................9, 17

Pass & Seymour, Inc. v. Hubbell Inc.,
    2007 WL 2172648 (N.D.N.Y. 2007)........................................................................14

Pegasus Development Corp. v. Directv, Inc.,
    No. Civ. A. 00-1020-GMS, 2003 WL 21105073 (D.Del. May 14, 2003) ............................9

Perricone v. Unimed Nutritional Servs., Inc.,
    2002 WL 31075868 (D.Conn. July 18, 2002) .........................................................13, 14

Richardson v. United States,
    841 F.2d 993 (9th Cir. 1988) ...........................................................................12, 14

Ricoh Co., Ltd. v. Aeroflex Inc.,
    2006 WL 3708069 (N.D. Cal. 2006)........................................................................12

Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.,
    572 F. Supp. 1210 (N.D. Ill. 1983) ........................................................................16

Serlin v. Arthur Andersen & Co.,|
    3 F.3d 221 (7th Cir. 1993) .............................................................................8, 15

Spa Syspatronic, AG v. Verifone, Inc.,
    No. 07-CV-416, 2008 WL 1886020 (E.D. Tex. April 25, 2008)..............................7, 9, 11

Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,
    33 U.S.P.Q. 2d 2022 (N.D. Cal. 1995)....................................................................13

quinn emanuel

iii

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1

2

### NOTICE OF MOTION AND MOTION

3      PLEASE TAKE NOTICE that Plaintiff/Counterclaim Defendant Kraft Foods Holdings,

4  Inc. ("KFH") and Third Party Defendant Kraft Foods Global, Inc. ("KFG") (collectively "Kraft"),

5  hereby moves this Court for an order to stay the present litigation pending (1) the outcome of a

6  currently-pending *inter partes* reexamination proceeding involving U.S. Patent Number 7,169,418

7  ("'418 patent"), a virtually identical patent to the patent at issue in this lawsuit, U.S. Patent

8  Number 7,169,419 ("'419 patent"), and (2) the resumption of the virtually identical stayed prior

9  action pending in this Court entitled <u>The Procter & Gamble Company v. Kraft Foods Global, Inc.</u>,

10  Case No. C-07-04413-PJH ("the '418 patent litigation").

11      There are two bases for staying this litigation.  First, the patent at issue -- the '419 patent --

12  is virtually identical to the '418 patent that currently is subject to reexamination proceedings.  This

13  Court should stay the present litigation pending the outcome of the *inter partes* reexamination

14  proceeding because, among other reasons, the *inter partes* reexamination may dispose of all or

15  some of the asserted claims and otherwise narrow the issues the Court must determine.

16      Second, this litigation is duplicative of the prior pending '418 patent litigation involving

17  the same parties, the same issues and the same evidence.  This Court already has issued an order

18  relating the two cases.  Thus, this Court should stay the present litigation pending the resumption

19  of the '418 litigation.  Litigating two separate actions that involve virtually identical patents with

20  virtually identical specifications and claims, as well as the same lead inventor and the same

21  prosecuting attorneys, alleging infringement based on the sale of the same accused product, is a

22  waste of the Court's and the parties' resources.

23      A stay of this litigation, pending resolution of the *inter partes* reexamination and/or

24  pending resumption of the '418 litigation, will conserve judicial resources, avoid potentially

25  conflicting decisions, and otherwise promote the efficient resolution of the parties' dispute.

26      This motion is supported by the accompanying Memorandum of Points and Authorities,

27  the pleadings and papers on file in this action, such other matters of which this Court may take

28  judicial notice including but not limited to all pleadings and papers on file in this Court in the

iv

quinn emanuel

1  matter entitled <u>The Procter & Gamble Company v. Kraft Foods Global, Inc.</u>, Case No. C-07-

2  04413-PJH, any further evidence and argument that may be presented at or before any hearing on

3  this matter and the Declaration of Evette D. Pennypacker and accompanying exhibits, filed

4  contemporaneously with this motion.

5  DATED:  May 30, 2008                    QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
6

7                                          By    //s// *Claude M. Stern*
8                                               Claude M. Stern
                                                Evette D. Pennypacker
9                                               Attorneys for Plaintiff/Counterclaim Defendant
                                                Kraft Foods Holdings, Inc. and Third Party
10                                              Defendant Kraft Foods Global, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**quinn emanuel**

**Preliminary Statement**

This lawsuit should be stayed.  This Court has already stayed litigation between The Procter & Gamble Company ("P&G") and Kraft Foods Global, Inc. ("KFG") over KFG's plastic 39 ounce container for Maxwell House brand coffee because the only patent P&G asserted there, U.S. Patent No. 7,169,418 ("'418 patent") (Declaration of Evette D. Pennypacker ("Pennypacker Decl.") Ex. B), is the subject of a still-pending *inter partes* reexamination proceeding before the PTO.  Specifically, this Court held:

> [T]here is a high likelihood here that final, binding results of the reexamination proceedings at issue — which contemplate final decisions by both the PBA and the Federal Circuit — would have a dramatic effect on the issues before the court.  This is particularly true if some or all of the claims at issue are ultimately found invalid, or narrowed.  Indeed, based on this same understanding of inter partes reexamination proceedings, other courts have recognized that an inter partes reexamination 'can have no other effect but to streamline ongoing litigation,' and that 'courts have an even more compelling reason to grant a stay when an inter partes reexamination is proceeding with the same parties....So here...in addition to the efficiency and streamlining of issues that would result from a stay, the court also notes that the pending litigation is at its earliest stages, thereby reducing the prejudice that any party would suffer from a stay.
> Pennypacker Decl. Ex. D.)

Despite this Court's October 11 stay order, P&G brought patent infringement counterclaims against KFG and a third party complaint against Kraft Foods Holdings, Inc. ("KFH") (collectively "Kraft") in a pending lawsuit between the parties in the Western District of Wisconsin accusing Kraft of infringing P&G's U.S. Patent No. 7,169,419 ("'419 patent") (Pennypacker Decl. Ex. J.)  The '419 patent is virtually identical to the '418 patent that is the subject of this Court's October 11 stay order.  The '419 patent and the '418 patent were issued on the same day, share the same specification, relate back to the same provisional application and share substantially similar claim language.  In P&G's '419 countersuit, P&G seeks damages and an injunction against sales of the very same 39-ounce plastic Maxwell House® brand coffee container it accused of infringement in the '418 patent case.  The identity between P&G's '418 patent case in California and its '419 patent countersuit in the Western District of Wisconsin led

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

the Wisconsin court to sever and transfer the '419 patent claims to this Court.  Notably, that court

held that "discovery concerning the '418 and '419 patents will be intertwined" and that

> the terms found in the '419 patent which are also found in the '418 patent
> shall be construed to have the same meaning in both patents because they
> both refer to the '338 patent application as their parent patent application .
> . . . The requirement that the terms be construed to have the same
> meaning in patents sharing a common ancestry means that separate
> construction of the '419 patent's claims that contain terms used in the '418
> patent's claims could lead to inconsistent claim construction and
> inconsistent judgment concerning the patents.  (Pennypacker Decl. Ex. L.)

In other words, the close relationship of the '418 and '419 patents means that there will be

substantially overlapping claim construction work, and the outcome of the pending *inter partes*

reexamination of the '418 patent will have a direct impact on the scope and meaning of the '419

patent claim terms.  Accordingly, this Court should conserve the Court's and the parties' resources

and wait to litigate P&G's '419 patent case until reexamination of the '418 patent has finally

concluded.  This is especially appropriate because P&G accuses the exact same Kraft product of

infringing both the '418 and the '419 patents.  If the Court does not stay P&G's '419 patent suit,

there will be duplicative discovery and the possibility of inconsistent or duplicative damages

awards.  The interests of justice and judicial economy point to staying P&G's '419 patent claims,

and Kraft's motion to stay those claims should be granted.

### Procedural and Factual Background

**I.    P&G's '418 Lawsuit and Kraft's *Inter Partes* Reexamination**

P&G filed an action against KFG on August 27, 2007, entitled The Procter & Gamble

Company v. Kraft Foods Global, Inc., Case No. C-07-04413-PJH, alleging that KFG's sales of

Maxwell House® brand coffee sold in 39-ounce plastic containers infringed the '418 patent.

(Pennypacker Decl. Ex. A.)

quinn emanuel

51282/2420187.6

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1    The '418 patent issued on January 30, 2007.  The next day, KFG filed a petition for an

2    *inter partes* reexamination of all 55 claims of the '418 patent .  (Id. Ex. E.)[1]  On June 7, 2007, the

3    PTO granted KFG's petition for *inter partes* reexamination and simultaneously issued an Action

4    Closing Prosecution ("ACP") confirming the reexamined claims.  (Id.)  On January 14, 2008, the

5    PTO issued a Right of Appeal Notice pursuant to 37 C.F.R. 1.953 (Manual of Patent Examining

6    Procedure § 2673.02).[2]  (Id. Ex. F.)  Kraft timely filed its appeal with the BPAI on February 14,

7    2008.  (Id. Ex. G.)[3]

8    **II.    P&G's Motion for Preliminary Injunction and Kraft's Motion to Stay**

9    On September 14, 2007, before Kraft was permitted to file its appeal of the PTO's

10   confirmation of claims, P&G filed a preliminary injunction motion seeking to enjoin Kraft's sales

11   of Maxwell House brand coffee in 39-ounce plastic containers.  (Id. Ex. C.)

12   On September 20, 2007, Kraft filed a motion for a stay or, in the alternative, for expedited

13   discovery and a continuance of the preliminary injunction hearing date.  Kraft's request for a stay

14   was premised on the fact that the '418 patent was subject to the *inter partes* reexamination

15   proceeding that was not yet final.

16   **III.    This Court Stays the '418 Litigation**

17   On October 11, 2007, this Court issued an order imposing a stay pending the completion of

18   the '418 patent reexamination.  (Id. Ex. D.)  This Court found that "there is a high likelihood here

19   that final, binding results of the reexamination proceedings at issue . . . would have a dramatic

20   effect on the issues before the court."  (Id. at 2:3-5.)  This Court correctly reasoned that the reexam

21   "can have no other effect but to streamline ongoing litigation," and that "courts have an even more

22   _____

23   [1]  The reexamination request ultimately was deemed filed on March 8, 2007.  (Pennypacker
     Decl. Ex. E.)

24   [2]  Unlike the more common *ex parte* reexaminations, *inter partes* proceedings allow for
     appeals to the Board of Patent Appeals and Interferences ("BPAI"), and subsequently to the

25   Federal Circuit.  See 35 U.S.C. §§ 134, 315.

26   [3]  On January 18, 2008, Kraft also filed with the PTO an *ex parte* reexamination request of the
     '418 patent.  (Pennypacker Decl. Ex. H.)  That request remains pending.  (Id. ¶9.)  Kraft

27   anticipates that this reexamination will be combined with the pending *inter partes* request and
     should not prolong the '418 reexamination proceedings.

28

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

quinn emanuel

1    compelling reason to grant a stay when an *inter partes* reexamination is proceeding with the same

2    parties . . . ." (Id. at lines 8-11.)  This Court also noted that "the pending litigation is at its earliest

3    stages, thereby reducing the prejudice that any party would suffer from a stay."  (Id. at 2:16-17.)

4    Thus, this Court granted the motion to stay, and ordered that "[i]n view of the court's grant of a

5    stay, [P&G's] pending motion for preliminary injunction is moot.  The court accordingly

6    VACATES the current hearing date of October 24, 2007, and all corresponding briefing

7    deadlines."  (Id. at 2:26-3:1.)

8         On November 9, 2007,  P&G filed its Notice of Appeal of this Court's October 11, 2007

9    order.  That appeal is pending.

10   **IV.    The Wisconsin, and Now Northern District of California, Duplicative '419 Litigation**

11        On October 26, 2007, KFH sued P&G in the Western District of Wisconsin, alleging

12   infringement of U.S. Patent No. 7,074,443 ('443 patent).[4]

13        P&G used Kraft's infringement action as its excuse to file a duplicative counterclaim and

14   third party complaint against KFH and KFG, alleging infringement of U.S. Patent No. 7,169,419

15   ("'419 patent").  (Pennypacker Decl. Ex. I.)  P&G's '419 counterclaim, like its stayed '418 claim,

16   alleges infringement based on Kraft's sales of the same Maxwell House brand coffee sold in the

17   same 39-ounce plastic containers.  Even P&G's contentions for why Kraft's 39-ounce plastic

18   containers infringe the '418 patent are virtually identical to P&G's contentions for why the same

19   containers infringe the '419 patent.  (Cf. Pennypacker Decl. Ex. K (P&G's preliminary

20   infringement contentions in '419 case) with Ex. C (P&G's motion for preliminary injunction in

21   '418 case) at 8-13.)

22        P&G also has confirmed that many of the witnesses in the '418 action will be witnesses in

23   this action.  Specifically, P&G has identified seven of the eight percipient witnesses who

24   submitted declarations in support of P&G's preliminary injunction motion filed in the '418

25   _____

26        [4]  The '443 patent, entitled "Vented Can Overcap," is directed to a spacing structure placed in
     the overcap of a coffee container to prevent the vent valve from becoming blocked.  The '443

27   patent litigation in the Western District of Wisconsin was voluntarily dismissed and is not at issue
     here.

28

1  litigation (e.g., Zeik, Floyd, Roe, Gemeiner, Bello, Schmeller and Mills) as persons P&G believes

2  will be witnesses in this '419 action.  (See id. Ex. K at 4.)

3      On November 29, 2007, Kraft filed a motion to dismiss the counterclaim and third party

4  complaint, or in the alternative, to stay the claims or transfer them to this District for consideration

5  with P&G's '418 claims.  The basis for Kraft's motion was that P&G's claims for infringement of

6  the '419 patent were in all relevant respects identical to its claims for infringement of the '418

7  patent that had been stayed by this Court.  The Western District of Wisconsin agreed and granted

8  Kraft's motion, ordering P&G's counterclaim and third party complaint severed and transferred to

9  this District.  (Pennypacker Decl. Ex. L.)  The court found that "[t]he facts and circumstances

10  surrounding P&G's counterclaim and third party claim for infringement of the '419 patent weigh

11  heavily in favor of transfer to conserve judicial resources," in part because "discovery concerning

12  the '418 and '419 patents will be intertwined" (id. at 9.) and also because of the "risk of

13  inconsistent claim construction and inconsistent judgments."  (Id. at 10.)

14      On February 14, 2008, after P&G's '419 claims were transferred to this District, Kraft filed

15  a Motion for Administrative Relief to Determine Whether [the '418 and '419] Cases Should Be

16  Deemed Related."  This Court granted Kraft's motion by order dated February 27, 2008, finding

17  the two cases to be related.

18  **V.     The '418 and '419 Patents**

19      As the court in the Western District of Wisconsin already has found, the '418 patent is

20  nearly identical to the '419 patent asserted here.  Both patents are entitled, "Packaging System to

21  Provide Fresh Packed Coffee," and both are directed to a plastic package for roast and ground

22  coffee.  The '419 patent is a continuation-in-part of the same application that led to the '418

23  patent, and both patents claim to relate back to the same provisional application, No. 60/295,666.

24  Consequently, the specifications of the '418 and '419 patents are nearly identical.  (Compare id.,

25  Ex. B with Ex. J.)  The claim language also is virtually identical.  (Id.)  The yellow highlighting

26  below shows literally identical claim language and pink highlighting shows virtually identical

27  claim language:

28

quinn emanuel

51282/2420187.6

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

| Claim No.'418 | '418 Claim Element | Claim No.'419 | '419 Claim Element |
|---|---|---|---|
| 1 | A packaging system comprising: | 1 | A packaging system comprising: |
| 1a | a container having a longitudinal axis and comprising a closed bottom, an open top, and a body having an enclosed perimeter between said bottom and said top; | 1a | a blow-molded container comprising a longitudinal axis, said blow-molded container further comprising a closed bottom, an open top, and a body having an enclosed perimeter between said bottom and said top; |
| 1b | wherein said bottom, top, and body together define an interior volume; | 1b | wherein said bottom, top, and body together define an interior volume |
| 1c | wherein said body comprises at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection; | 1c | wherein said body has at least one region of deflection disposed thereon, and wherein said region of deflection allows flexion and thereby has less resistance to flexing than the body of said container proximate to said region of deflection; |
| 1d | a protuberance continuously disposed around the perimeter of said body proximate to said top wherein said protuberance forms a ridge external to said body; | 1d | an outwardly facing annular protuberance disposed upon said body, said annular protuberance being continuously disposed around said perimeter of said body proximate to said top wherein said protuberance forms a surface external to said body, said surface being substantially perpendicular to said longitudinal axis; |
| 1e | a handle disposed on said body; | 8 | The packaging system of claim 1 wherein said body has a handle disposed thereon. |
| 1f | and a flexible closure removably attached and sealed to said protuberance; | 1e | and, a flexible closure removably attached and sealed to said annular protuberance; |
| 1g | wherein said bottom and said body are constructed from a material having a tensile modulus number ranging from at least about 35,000 pounds per square inch (2,381 atm) to at least about 650,000 pounds per square inch (4,230 atm); | 18 | The packaging system of claim 17 wherein said blow-molded container is manufactured from a material having a tensile modulus ranging from at least about 35,000 pounds per square inch (2,381 atm) to at least about 650,000 pounds per square inch (4,230 atm). |
| 1h | wherein said container has a top load capacity of at least about 16 pounds (7.3 kg); | 17f | wherein said annular protuberance translates the force of a load of at least about 16 pounds disposed upon said packaging system in a direction substantially parallel to said longitudinal axis and wherein coffee is contained within said packaging system. |
| 1i | and wherein said closure has a one-way valve disposed thereon. | 4 | The packaging system of claim 1 wherein said flexible closure has a one-way valve disposed thereon. |

51282/2420187.6

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1    Both P&G's '418 litigation and this '419 litigation seek to enjoin sales of the same

2 Maxwell House brand coffee in the same 39-ounce plastic containers, and to recover damages for

3 the same allegedly infringing sales.  (Compare id. Ex. C at 8-13 with Ex. K's "exhibit A".)

4                                              **Argument**

5 **I.      This Court Has Discretion And Authority To Stay This Litigation.**

6    "It is well recognized that a federal district court has the inherent power to administer its

7 docket in a manner that conserves scarce judicial resources and promotes the efficient and

8 comprehensive disposition of cases."  M.C. Prods., Inc. v. AT&T Co., 205 F.3d 1351, 1999 WL

9 1253223, at *1 (9th Cir. Dec. 2, 1999).  That inherent power includes the ability to stay litigation

10 upon whatever terms are appropriate.  Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S.

11 180, 183 (1952); Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 749

12 (9th Cir. 1979); Spa Syspatronic, AG v. Verifone, Inc., No. 07-CV-416, 2008 WL 1886020, at * 1

13 (E.D. Tex. April 25, 2008) ("A district court has the inherent power to control its own docket,

14 including the power to stay proceedings.").

15 **II.     P&G Should Not Be Permitted To Avoid This Court's Prior Stay Order By Litigating**
   **A Duplicative Claim.**
16

17    P&G could have brought its '419 infringement claim against Kraft at the same time it

18 brought its '418 infringement claim.  P&G's "we win even if we lose" gaming strategy has all

19 along been to seek enforcement of its '418 patent in this Court, and when that action was

20 predictably stayed, because the '418 was in reexam, to seek enforcement of its closely-related '419

21 patent in another court.  This Court need not, and should not, tolerate this sort of gamesmanship.

22    P&G was "required to bring at one time all of the claims against a party or privies relating

23 to the same transaction or event."  Adams, 487 F.3d at 693.  This is because "[p]laintiffs generally

24 have no right to maintain two separate actions involving the same subject matter at the same time

25 in the same court and against the same defendant."  Adams, 487 F.3d at 688 (internal quotation

26 marks omitted).  "It is well established that a party may not split a cause of action into separate

27 grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must

28 raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of

-7-

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

51282/2420187.6

quinn emanuel

1    transactions that can be brought together." <u>Mars Inc. v. Nippon Conlux Kabushiki-Kaisha</u>, 58

2    F.3d 616, 619 (Fed. Cir. 1995)  This is particularly true when a plaintiff chooses to bring two

3    separate actions against two parties based on the exact same alleged acts.  <u>Id</u>. at 620.

4        P&G's duplicative lawsuit is especially egregious because it represents an obvious attempt

5    by P&G to avoid the effects of this Court's stay ruling.  Numerous cases hold that plaintiffs should

6    not be allowed to avoid an adverse ruling in an earlier filed action by filing a duplicative action in

7    another forum.  <u>See</u>, <u>e.g.</u>, <u>Black & Decker, Inc. v. Robert Bosch Tool Corp.</u>, 500 F. Supp. 2d 864,

8    872-73 (N.D. Ill. 2007) (dismissing second filed action involving same patent claims against new

9    products where new products were precluded from first filed action); <u>Civix</u>, 2005 WL 112906, at

10   *5 (holding plaintiff did not have "the right to assert new patent claims against Defendants merely

11   because the Court issued its <u>Markman</u> ruling").[5]

12       There is no justification for P&G's attempt to bring a duplicative claim in Wisconsin

13   simply so it could avoid of this Court's ruling imposing a stay.  Now that P&G's claim is back in

14   this District where it belongs, this Court should refuse to reward P&G's gamesmanship and

15   instead stay this litigation pending the resolution of the prior pending '418 litigation.

16   **III.    This Litigation Should Be Stayed Pending The '418 Patent Reexamination.**

17       **A.    Patent Litigation Should Be Stayed Pending *Inter Partes* Reexaminations Of
              Relevant Patents.**

18

19       It is especially appropriate to invoke this Court's inherent authority to stay patent litigation

20   pending *inter partes* patent reexamination proceedings.  <u>See</u> <u>Gould v. Control Laser Corp.</u>, 705

21   _____

22       [5]   The policy against the kind of gamesmanship employed by P&G is so strong that this Court
     would be within its discretion to <u>dismiss</u> this lawsuit, let alone stay it.  "Courts have consistently

23   held that a plaintiff is barred from asserting a patent in a subsequent action against products or
     processes if that patent could have been asserted in the prior action."  <u>American Stock Exchange,</u>

24   <u>LLC v. Mopex, Inc.</u>, 215 F.R.D. 87, 92 (S.D.N.Y. 2002).  In fact, a duplicative action may be
     dismissed even where the plaintiff will face adverse consequences as a result.  In <u>Serlin</u>, for

25   example, the plaintiff's first action was in danger of being dismissed for untimely service, and the
     statute of limitations would have barred it from being re-filed.  Nevertheless, the Seventh Circuit,

26   expressly noting this negative consequence, still affirmed the district court's decision to dismiss
     the second action as duplicative of the first.  <u>See</u> <u>Serlin v. Arthur Andersen & Co.</u>, 3 F.3d 221, 224

27   (7th Cir. 1993).

28

quinn emanuel

1    F.2d 1340, 1341 (Fed. Cir. 1983); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir.

2    1998).  District courts should adhere to a "liberal policy in favor of granting motions to stay

3    proceedings pending the outcome of USPTO reexamination or reissue proceedings." ASCII Corp.

4    v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).  A court should stay an

5    infringement case based upon a parallel reexamination in order to avoid inconsistent results,

6    narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial

7    resources.  See Gould., 705 F.2d at 1342.  These principles have been repeatedly, and frequently,

8    affirmed by district courts across the country.  See, e.g., Spa Syspatronic, 2008 WL 1886020, at *

9    1, 3-4 (E.D. Tex. April 25, 2008).

10       **B.    A Stay Of This '419 Litigation Is Appropriate Even Though The '418 Patent Is
              The Patent In Reexamination.**

11            The only difference between this litigation and the '418 litigation that this Court stayed is

12   that the patent at issue here is a nominally different patent than the '418 patent in reexamination.

13   Given the overwhelming similarity between the two patents, however, that is a distinction without

14   a difference.

15            When, as is the case here, plaintiff's patent is pending PTO reexamination, courts routinely

16   stay independent infringement litigation based on unexamined but related patents.  See, e.g.,

17   Pacesetter, Inc. v. Cardiac Pacemakers, No. Civ. 02-1337, 2003 WL 23303473, at *3 (D.Minn.

18   Nov. 19, 2003) (entire proceeding stayed where two of four patents in suit underwent

19   reexamination, and expressly rejecting "the alternative of proceeding ahead with the patents that

20   are not under reexamination"); KLA-Tencor Corp. v. Nanometrics, Inc., No. C. 05-03116, 2006

21   WL 708661, at *4 (N.D. Cal. Mar. 16, 2006) (stay granted where reexamination of two patents in

22   suit "may significantly affect the [third patent in suit]"); Pegasus Development Corp. v. Directv,

23   Inc., No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at *3 (D.Del. May 14, 2003) (stay granted

24   where reexamination of one of two patents in suit "may materially affect the issues in the

25   case...."); Datatreasury Corp. v. Wells Fargo & Co., 490 F. Supp. 2d 749 (E.D. Tex. 2006) (stay

26   granted where PTO commenced reexamination of some of the patents in suit).

27

28

1    For example, in <u>Modine Mfg. Co. v. Delphi Automotive Sys., LLC</u>, No. 00-C258, 2000

2    WL 33989247 (E.D. Wis. Dec. 8, 2000), the defendant brought a motion to stay patent litigation

3    pending an appeal to the Federal Circuit of the rejection of a different patent application.  The

4    district court granted the stay motion because the claims on appeal were "strikingly similar in their

5    wording, and the relevant illustrations [were] identical" to the patent at issue.  <u>Id</u>. at *1.  Even

6    though the appeal arguably presented "different issues," the district court held that "the federal

7    circuit's decision need not conclusively settle every question in the instant case; to justify a stay,

8    there only needs to be a likelihood that the decision will shed light upon and simplify the issues

9    presented here."  <u>Id</u>.

10    **C.    The '418 Reexamination Warrants Staying This Litigation.**

11    In determining whether to grant a stay pending reexamination, this Court should consider:

12    (1) whether a stay will simplify the issues and trial of the case; (2) whether discovery is complete

13    and whether a trial date has been set; and (3) whether a stay would unduly prejudice or present a

14    clear tactical disadvantage to the non-moving party.  <u>See</u> <u>Nanometrics, Inc. v. Nova Measuring</u>

15    <u>Instruments, Ltd.</u>, No. C-06-2252 SBA, 2007 WL 627920, at *2 (N.D. Cal. Feb. 26, 2007).  Here,

16    each of the factors is met, and the interests of justice would plainly be served by granting a stay.

17    **1.    A Stay Would Simplify The Issues And Avoid The Likelihood Of**
**Inconsistent Results Or Wasted Effort.**

18

19    Kraft's appeal of the PTO's reexamination decision to the BPAI is pending and is not yet

20    final.  (Pennypacker Decl. ¶8.)  Allowing the reexamination to run its course before moving

21    forward with the present litigation will simplify the issues for the Court to consider and may even

22    render the entire litigation moot.  <u>See</u> <u>Nanometrics</u>, 2007 WL 627920, at *3. ("Waiting for the

23    outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if

24    the claims survive, facilitate the trial by providing the Court with the opinion of the USPTO and

25    clarifying the scope of the claims.").

26    These are exactly the considerations that led this Court to conclude that "there is a high

27    likelihood here that final, binding results of the reexamination proceedings at issue -- which

28    contemplate final decisions by both the [BPAI] and the Federal Circuit -- would have a dramatic

-10-

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

1    effect on the issues before the court." (Pennypacker Decl. Ex. D at 2:3-5.) This Court also noted

2    that "other courts have recognized that an *inter partes* reexamination 'can have no other effect but

3    to streamline ongoing litigation,' and that 'courts have an even more compelling reason to grant a

4    stay when an *inter partes* reexamination is proceeding with the same parties . . . .'" (Id. at 2:8-11.)

5        This is true even though it is the '418 patent and not the '419 patent that is in

6    reexamination because the reexamination of the '418 patent will simplify the issues this Court

7    needs to resolve relative to the '419 patent. See, e.g., Modine Mfg. Co., 2000 WL 33989247, at

8    *1 (granting stay of patent litigation because Federal Circuit appeal of different patent application

9    would simply issues pending before the court). Even if the '418 claims are confirmed in whole or

10   in part in reexamination, those proceedings still will have a direct impact on the '419 patent's

11   scope and validity. The Federal Circuit has repeatedly held that "the same term[s] and phrase[s]

12   should be interpreted consistently where it appears in claims of common ancestry." Epcon Gas

13   Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1030 (Fed. Cir. 2002); see also Spa

14   Syspatronic, 2008 WL 1886020, at * 1 ("One major reason why stays pending reexamination are

15   granted is that whether or not the PTO ultimately amends or invalidates a patent's claims during

16   reexamination, the PTO's reexamination provides the Court with an expert funneling of the issues

17   for trial.") (emphasis added); Elkway Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 980 (Fed. Cir.

18   1999); Abtox, Inc. v. Exitron Corp., 131 F.3d 1009, 1010 (Fed. Cir. 1997). The '419 is a

19   continuation-in-part of the '418 patent and the patents share a common provisional application.

20   The claim language in both patents is virtually identical. The BPAI, and possibly the Federal

21   Circuit thereafter, will necessarily determine the scope and meaning of the many '419 patent

22   claims terms common to both patents, such as "protuberance," "region of deflection," "flexible

23   closure," etc. The meaning of those terms must be the same in both patents; thus, the

24   interpretation of such terms in the '418 reexamination is directly relevant to the meaning of the

25   '419 patent. KLA-Tencor Corp., 2006 WL 708661, at *4 (overlap of claim language factor in

26   favor of stay).

27        Accordingly, the Wisconsin court already held, "[t]he Federal Circuit has explained that in

28   construing a term found in claims in separate patents that were formed from a parent patent

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1   application it would be improper to construe [the] term differently in one patent than another,

2   given their common ancestry," and concluded that the law "requires that the terms found in the

3   '419 patent which are also found in the '418 patent shall be construed to have the same meaning in

4   both patents . . . ." (Pennypacker Decl. Ex. L at 10 (internal quotation marks omitted).)  Thus, the

5   court   (Id.)  The findings of the Wisconsin court are "law of the case" and this Court should not

6   revisit them.  Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).  The law of the case

7   doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's

8   own decisions . . . .  Federal courts routinely apply law-of-the-case principles to transfer decisions

9   of coordinate courts . . . .  Indeed, the policies supporting the doctrine apply with even greater

10  force to transfer decisions than to decisions of substantive law . . . ." Christianson v. Colt Indus.

11  Operating Corp., 108 S.Ct. 2166, 2177-78 (1988).

12          Waiting for the reexamination to resolve also will avoid the possibility of inconsistent

13  decisions from the PTO or BPAI or Federal Circuit and this Court.  Ricoh Co., Ltd. v. Aeroflex

14  Inc., 2006 WL 3708069, *5 (N.D. Cal. 2006) (granting stay in part because it was "possible that

15  this Court and the PTO could reach inconsistent conclusions regarding the same patent").  The

16  Western District of Wisconsin agreed, holding that litigating the '419 claims separately from the

17  '418 claims poses "a risk of inconsistent claim construction and inconsistent judgments."

18  (Pennypacker Decl. Ex. N at 10.)

19          **2.     Discovery Is Not Complete And No Trial Date Has Been Set.**

20          "In addition to the efficiency and streamlining of issues that would result from a stay, the

21  court also notes that the pending litigation is at its earliest stages, thereby reducing the prejudice

22  that any party would suffer from a stay." (Pennypacker Decl. Ex. D at 2:15-17.)  Although a

23  certain amount of limited discovery began in the '419 case, and the parties exchanged preliminary

24  proposed constructions of certain terms in the '419 patent, discovery is far from complete.  No

25  depositions have been noticed by either party.  No expert reports have been exchanged (nor

26  experts disclosed).  No Markman hearing has been ordered and no trial date has been set.  The

27  relatively nascent discovery in this case also favors a stay.  See, e.g., Nanometrics, 2007 WL

28  627920, at *2 (granting stay requested nine months after suit because although "[d]iscovery has

-12-

quinn emanuel

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1  commenced . . . . it has not proceeded" significantly); <u>KLA-Tencor</u>, 2006 WL 708661, at *2

2  (granting stay where "discovery has just begun"); <u>Target Therapeutics, Inc. v. SciMed Life Sys.,</u>

3  <u>Inc.</u>, 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995) (same); <u>ASCII</u>, 844 F. Supp. at 1381 (same).

4

5       In fact,

6           [s]ome courts have granted stays pending re-examination
            proceedings notwithstanding the well-developed posture of the
7           litigation. <u>See, e.g.</u>, <u>Gould</u>, 705 F.3d 1340 (stay granted five years
            after commencement of litigation and 20 days before scheduled trial
8           date); <u>Loffland Brothers Co v. Mid-western Energy Corp.</u>, 225
            U.S.P.Q. 886 (W.D.Okla.1985) (stay granted after substantial
9           discovery, pre-trial conference, and scheduled trial date); <u>Emhart</u>, 3
            U.S.P.Q.2d 1889 (stay granted 18 months after significant
10          discovery, but no trial preparation); <u>Grayling Industries, Inc. v.</u>
            <u>GPAC, Inc.</u>, 19 U.S.P.Q.2d 1872, 1873 (N.D.Ga.1991) (stay granted
11          with discovery completed and only trial remaining in case).

12  <u>Perricone v. Unimed Nutritional Servs., Inc.</u>, 2002 WL 31075868, at *3 n.1 (D.Conn. July 18,

13  2002).

14                    **3.    P&G Will Not Be Prejudiced By A Stay.**

15       P&G will not suffer any litigation prejudice as a result of a stay.  Although the parties have

16  exchanged limited discovery in this case, as of the date of this motion, no depositions have been

17  taken and no expert reports have been prepared.  Notably, P&G has not moved for a preliminary

18  injunction in this case (nor could it, ten months after Kraft first introduced its allegedly infringing

19  products), so P&G cannot argue that it will suffer irreparable harm from a stay.  In fact, P&G well

20  knows, and Kraft is prepared to provide evidence of the fact that, P&G has not suffered <u>any</u> injury,

21  much less irreparable injury, as a result of Kraft's introduction of its plastic 39-ounce Maxwell

22  House brand container.  If P&G's infringement allegations are correct, it can seek damages for any

23  such infringement after the validity and scope of the '418 and '419 patents are finally determined.

24  This is precisely what the Western District of Wisconsin found when it transferred this case to this

25  District:  "P&G . . . does not elaborate why docket speed is necessary in this case.  It is not

26  disputed that the parties sell competing coffee containers but P&G does not explain why it could

27  not be readily compensated by a reasonable royalty."  (Pennypacker Decl. Ex. L at 8-9.)  These

28

quinn emanuel

51282/2420187.6

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1    determinations are law of the case and should not be disturbed.  <u>Richardson</u>, 841 F.2d at 996;

2    <u>Christianson</u>, 108 S.Ct. at 2177-78.

3         Moreover, even if P&G had moved (or does move) for a preliminary injunction in this

4    case, an allegation of "irreparable harm" is not the relevant prejudice in the context of a stay.  "A

5    stay of litigation may be appropriate, pending PTO reexamination, even in a case where a

6    preliminary injunction motion has been made."  <u>Pass & Seymour, Inc. v. Hubbell Inc.</u>, 2007 WL

7    2172648, at *12 (N.D.N.Y. 2007).  Kraft's motion requires the Court to consider "whether a stay

8    would unduly prejudice or present a clear tactical disadvantage to the non-moving party."

9    <i>Nanometrics</i>, 2007 WL 627920, at *2.  There is no authority for equating allegations of

10   irreparable harm with "undue prejudice" and "tactical disadvantage" because those latter standards

11   are used to deny stays due to "the late stage of litigation, the fact that discovery was or would be

12   almost completed, or trial had been set."  <u>Perricone v. Unimed Nutritional Servs., Inc.</u>, 2002 WL

13   31075868 (D.Conn. July 18, 2002).  None of those factors are present here.  P&G has not spent

14   any significant time or resources on discovery, motion practice or other activities related to this

15   lawsuit.  <u>See</u> <u>KLA-Tencor</u>, 2006 WL 708661, at *3 ("Granting a stay does not cause the

16   nonmoving party undue prejudice when that party has not invested substantial expense and time in

17   the litigation."); <u>Nanometrics</u>, 2007 WL 627920, at *2 (noting that "the early stage of litigation

18   weighs in favor of a stay").  When imposing a stay of the '418 litigation, this Court correctly

19   recognized that the early stage of litigation would reduce any prejudice that P&G might allege.

20   (Pennypacker Decl. Ex. D at 2:15-17.)

21   **IV.    This Case Should Be Stayed Because It Is Duplicative Of The '418 Litigation.**

22        Independent of staying this case pending the reexamination of the '418 patent, this case

23   should be stayed for the simple reason that it should be litigated and tried together with the '418

24   case to promote judicial economy.  Because the '418 case already is stayed, granting a stay here

25   would preserve this Court's and the parties' resources generally, including those associated with

26   claim construction.

27

28

51282/2420187.6

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

quinn emanuel

**A.    This Court Has Authority And Discretion To Stay Duplicative Litigation.**

This Court "may exercise its discretion to dismiss a duplicative later-filed action [or] to stay that action pending resolution of the previously filed action . . . ." <u>Adams v. California Dept. of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. 2007); <u>see also</u> <u>American Life Ins. Co. v. Stewart</u>, 300 U.S. 203, 215 (1937) ("A court has control over its own docket . . . .  In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same."); <u>M.C. Prods.</u>, 1999 WL 1253223, at *1 (9th Cir. Dec. 2, 1999) ("[A] district court has discretion to transfer, stay, or dismiss an action whenever it is duplicative of a parallel action already pending . . . .").

"In a situation such as here, where one district court had duplicative suits contemporaneously pending on its docket, we conclude, as did the Supreme Court in an analogous situation, that '[n]ecessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower court[].'" <u>Adams</u>, 487 F.3d at 692 (quoting <u>Kerotest Mfg. Co.</u>, 342 U.S. at 183-84).

**B.    A Stay Will Promote Judicial Economy.**

"[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." <u>M.C. Prods.</u>, 1999 WL 1253223, at *1 (quoting <u>Serlin v. Arthur Andersen & Co.</u>, 3 F.3d 221, 223 (7th Cir. 1993)).  The claims, parties and available relief in this action are virtually identical with the claims, parties and available relief in the '418 litigation.

The relief P&G seeks in both cases is identical:  damages from, and enjoining, sales of Maxwell House brand coffee sold in 39-ounce plastic containers.  The claims also are identical because the '418 and '419 patents themselves are virtually identical.  Both patents are directed to a plastic package for roast and ground coffee, share the same primary inventor, share the same primary examiner, share the same prosecuting attorneys, share many of the same cited references and relate back to the same provisional application.  The specification and claim language also are nearly identical.  Thus, the infringement analysis for the '418 and '419 patents will be nearly identical.

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

51282/2420187.6

quinn emanuel

1    Moreover, in the Ninth Circuit, "[t]o ascertain whether successive causes of action are the

2  same, we use the transaction test . . . .  Whether two events are part of the same transaction or

3  series depends on whether they are related to the same set of facts and whether they could

4  conveniently be tried together."  Adams, 487 F.3d at 689 (internal quotation marks omitted).  The

5  '418 and '419 cases easily meet this test because they both allege infringement by the same

6  accused Kraft product.  Based on the overwhelming identity of evidence (inventors, prosecuting

7  attorneys, relevant documents, etc.), there can be little argument that the two cases relate to the

8  same set of facts and could conveniently be tried together.[6]

9    The parties in the two cases also are the same.  P&G is the plaintiff in both, and KFG is a

10 defendant in both.  The only difference with this litigation is that P&G added KFH, a wholly-

11 owned subsidiary of KFG, as a party.  However, P&G has indicated that it "plans to dismiss Kraft

12 Foods Holdings, Inc. as a defendant in this action."  (Joint Case Management Statement at 4:20-

13 21, May 22, 2008, Docket No. 35.)  In any event, the current presence of KFH in this lawsuit is

14 irrelevant because of the close relationship between KFH and KFG and because there was "an

15 identity of interests and adequate representation" in the prior lawsuit.  Adams, 487 F.3d at 691.

16 "Given the equitable nature of considerations related to the wise administration of the federal court

17 system, a rigid, mechanical application of the rules and standards is to be eschewed."  Ridge Gold

18 Standard Liquors v. Joseph E. Seagram & Sons, Inc., 572 F. Supp. 1210, 1214 (N.D. Ill. 1983)

19 (finding sufficient identity of parties even though the plaintiffs in the two actions were "separately

20 incorporated" and had "separate legal existences").

21    The accused product, witnesses, technology and other evidence related to P&G's '418

22 action and this '419 action are virtually identical.  Thus, it is a near certainty that the "engineering

23

24    [6]  It makes no difference that distinct patents give rise to separately enforceable property
rights, because even if two suits implicate "distinct rights enforceable by litigants, this factor alone
25 does not differentiate causes of action."  Adams, 487 F.3d at 691.  For example, different claims of
a single patent also involve separate property rights (see, e.g., Norfin, Inc. v. IBM Corp., 625 F.2d
26 357, 362 (10th Cir. 1980), but separate claims of a single patent still may be subject to claim
preclusion; that is, they may be considered sufficiently related that the second action may be
27 dismissed with prejudice, not to mention stayed.  See, e.g., Civix-DDI v. Expedia, Inc., No. 04 C
8031, 2005 WL 1126906, at *4 (N.D. Ill., May 2, 2005).

28

1  and sales personnel deposed would be the same for [both patents]." <u>KLA-Tencor Corp.</u>, 2006 WL

2  708661, at *4.  Because the same accused product is at issue and P&G seeks injunctive and

3  monetary damages in both cases, the damages analysis for the '419 and '418 patents will also be

4  identical.

5      These are exactly the considerations that favor staying patent litigation in light of a

6  pending reexamination of a different patent:  the overlap of accused products, witnesses,

7  technology and evidence.  <u>See</u> <u>Pacesetter</u>, 2003 WL 23303473, at *3; <u>KLA-Tencor Corp.</u>, 2006

8  WL 708661, at *4.

9      In sum, a stay is appropriate here because "any fair scrutiny of the record in this case

10  compels the conclusion that the [two] patents in question, although unrelated, are inextricably

11  intertwined.  There is no discernable demarcation of issues, experts, or products.  In addition,

12  duplicity and overlap will occur when addressing issues such as experts, discovery, damages, and

13  products." <u>Pacesetter</u>, 2003 WL 23303473, at *1.

14      Without a stay, not only will resources be wasted by having this Court twice consider the

15  exact same issues, but conflicting outcomes also may result.  If this Court moves forward with

16  P&G's '419 infringement claim, this Court's claim construction, validity and infringement

17  determinations could not only conflict with the PTO, the BPAI and/or the Federal Circuit, but also

18  with decisions later made in the '418 action.[7]  Going forward with P&G's '419 infringement claim

19  when the virtually identical '418 case has been stayed would be a waste of the party's and this

20  Court's resources.

21      The Western District of Wisconsin transferred this case to this District precisely because it

22  determined that litigating the case together with the '418 litigation would serve judicial economy.

23  The court found that the overlapping nature of the '418 litigation and this case "weigh heavily in

24  favor of transfer to conserve judicial resources . . . ."  (Pennypacker Decl. Ex. L at 9.)  The court

25  further found that "discovery concerning the '418 and '419 patents will be intertwined . . . .

26  _____

27  [7]  P&G might be barred by collateral estoppel or otherwise from later contesting in the '418
case the findings made in this case.

28

NOTICE OF MOTION AND MOTION FOR A STAY
CASE NO. C 08-930 PJH

1  Accordingly, coordinating discovery in one district would promote efficiency among the parties as

2  well as avoid the duplication of discovery among the parties concerning related patents." (Id. at

3  10.)

4      Because this litigation is clearly duplicative with the prior, pending '418 litigation, this

5  case should be stayed until the stay of the '418 litigation is lifted so that the two actions may be

6  litigated together and the Court and the parties can benefit from the obvious judicial economy.

7                      **Conclusion**

8      For all of the foregoing reasons, Kraft respectfully requests that this Court stay this

9  litigation, pending resolution of the *inter partes* and *ex parte* reexaminations of the '418 patent

10 and the resumption of the '418 litigation pending in this Court.

11

12 DATED:  May 30, 2008                 Respectfully submitted,

13                                      QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
14

15                                      By  //s//
16                                          Claude M. Stern
                                            Evette D. Pennypacker
17                                          Attorneys for Plaintiff/Counterclaim Defendant
                                            Kraft Foods Holdings, Inc. and Third Party
18                                          Defendant Kraft Foods Global, Inc.

19

20

21

22

23

24

25

26

27

28

**quinn emanuel**

-18-