1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
     Evette D. Pennypacker (Bar No. 203515)
3    evettepennypacker@quinnemanuel.com
     Thomas E. Wallerstein (Bar No. 232086)
4    tomwallerstein@quinnemanuel.com
     Gabriel S. Gross (Bar No. 254672)
5    gabegross@quinnemanuel.com
     555 Twin Dolphin Drive, Suite 560
6  Redwood Shores, California  94065-213
     Telephone:     (650) 801-5000
7  Facsimile:     (650) 801-5100

8  Attorneys for Kraft Foods Global, Inc.

9

10                     UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13  THE PROCTER & GAMBLE COMPANY,          CASE NO. 3:08-cv-00930 PJH

14            Plaintiff,                   KRAFT FOODS GLOBAL, INC.'S REPLY
                                           IN SUPPORT OF MOTION FOR STAY
15       vs.

16  KRAFT FOODS GLOBAL, INC.,

17            Defendant.

18

19

20

21

22

23

24

25

26

27

28

51389/2541000.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..........................................................................................................................3

I.    A STAY WOULD PROMOTE JUDICIAL EFFICIENCY .........................................3

     A.    ABSENT A STAY, THIS COURT AND THE PARTIES WILL ENGAGE
          IN WASTED CLAIM CONSTRUCTION EFFORTS.............................................3

     B.    P&G IGNORES THE OVERWHELMING AUTHORITY FAVORING A
          STAY AND OFFERS NO CONTRARY AUTHORITY.............................................5

     C.    THE WISCONSIN COURT DID NOT DENY KRAFT'S MOTION TO
          STAY ON THE MERITS..........................................................................................7

II.    P&G WILL NOT BE PREJUDICED BY A STAY ......................................................7

     A.    THE LIMITED DISCOVERY CONDUCTED DOES NOT WARRANT
          DENYING THE STAY............................................................................................8

     B.    P&G HAS DEMONSTRATED NO PREJUDICE THROUGH DELAY................9

     C.    P&G PRESENTED NO EVIDENCE THAT A STAY WOULD CAUSE
          P&G ANY HARM THAT COULD NOT BE ADEQUATELY
          COMPENSATED, IF NECESSARY, WITH MONEY DAMAGES. ....................11

     D.    P&G PRESENTED NO EVIDENCE THAT IT IS LIKELY TO LOSE
          EVIDENCE AS A RESULT OF A STAY. ...........................................................12

III.   A STAY NEED NOT BE LIMITED TO AVOID PREJUDICE TO P&G. ......................13

     A.    A STAY SHOULD NOT BE CONDITIONED ON ALLOWING P&G
          DISCOVERY..........................................................................................................13

     B.    THE STAY SHOULD NOT BE LIMITED TO THE DURATION OF THE
          *EX PARTE* REEXAMINATION. ........................................................................14

CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

### Cases

Adams v. Newell Rubbermaid Inc.,
   2007 U.S. Dist. LEXIS 625212 (W.D. Wis. Aug. 21, 2007) ....................................................10

Datatreasury Corp. v. Wells Fargo & Co.,
   490 F. Supp. 2d 749 (E.D. Tex. 2006) ...........................................................................................5

E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,
   849 F.2d 1430 (Fed. Cir. 1988) .......................................................................................................4

Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,
   279 F.3d 1022 (Fed. Cir. 2002) .......................................................................................................3

Ethicon, Inc. v. Quigg,
   849 F.2d 1422 (Fed. Cir. 1988) .......................................................................................................6

KLA-Tencor Corp. v. Nanometrics, Inc.,
   2006 WL 708661 (N.D. Cal. Mar. 16, 2006) ..................................................................................5

Markman v. Westview Instruments, Inc.,
   52 F.3d 967 (Fed. Cir. 1995) ...........................................................................................................4

Modine Mfg. Co. v. Delphi Automotive Sys., LLC,
   2000 WL 33989247 (E.D. Wis. Dec. 8, 2000) ...............................................................................6

Nikken USA, Inc. v. Robinsons-May, Inc.,
   2002 WL 31664765 (Fed. Cir. Nov. 20, 2002) ...............................................................................4

Nutrition 21 v. United States,
   930 F.2d 867 (Fed. Cir. 1991) .......................................................................................................12

Pacesetter, Inc. v. Cardiac Pacemakers,
   2003 WL 23303473 (D.Minn. Nov. 19, 2003) ...............................................................................5

Pegasus Development Corp. v. Directv, Inc.,
   2003 WL 21105073 (D.Del. May 14, 2003) ...................................................................................5

Polymer Tech. v. Bridwell,
   103 F.3d 970 (Fed. Cir. 1996) .......................................................................................................11

Spa Syspatronic, AG v. Verifone Inc.,
   2008 WL 1886020 (E.D. Tex. April 25, 2008) ............................................................................6, 9

Van Dusen v. Barrack,
   376 U.S. 612 (1964) .........................................................................................................................9

## Preliminary Statement

1

2      Kraft's motion to stay raises one simple question:  should the Court stay this patent

3    infringement suit pending the outcome of reexamination proceedings involving a related patent?

4    There is no question that the answer should be "yes."  The case law remains unchallenged – P&G

5    does not even attempt to address Kraft's cited authority – that, if P&G had asserted both the '418

6    and the '419 patents in the original '418 suit that Judge Hamilton ordered stayed, the infringement

7    claims on the related '419 patent would have also been properly stayed.  The law is equally clear

8    that decisions involving the '418 patent from the PTO and later the BPAI and the Federal Circuit

9    will directly impact the scope of the '419 patent.  P&G's opposition completely ignores these

10    critical issues, and instead makes a variety of desperate misrepresentations and half-truths to this

11    Court:

12      •    P&G tries to smear Kraft's counsel by misrepresenting that, in the prior '418

13    action, Kraft's counsel told this Court that "staying P&G's action would avoid litigation between

14    the parties" (Opp. at 6:15-16.)  P&G's suggestion is categorically false.  The stay hearing transcript

15    in the '418 patent case proves that Kraft correctly argued only that a stay could "even obviate the

16    need for this litigation entirely."  (Davidson Decl., Ex. 2 at 2:9-10 (emphasis added); Stern Decl.

17    ¶3.)

18      •    P&G argues that Kraft misrepresented that it would file its appeal to the BPAI

19    "once the PTO issues the Right to Appeal Notice."  (Opp. at 7:11-13.)  Kraft was not permitted to

20    appeal until it received a Right of Appeal Notice ("RAN") pursuant to 37 C.F.R. 1.953 (Manual of

21    Patent Examining Procedure § 2673.02).  The PTO mailed the RAN to Kraft on January 14, 2008

22    and Kraft filed its appeal 31 days later on February 14, 2008.  (Pennypacker Decl. in Support of

23    Motion to Stay ("Pennypacker Decl."), Exs. F and G.)  There is no question that Kraft's appeal to

24    the BPAI was timely.

25      •    P&G argues that Kraft dismissed the unrelated '443 Wisconsin lawsuit in the face

26    of P&G's summary judgment motions.  (See, e.g., Opp at 1.)  P&G fails to mention that the case

27    was dismissed by agreement between the parties after it became clear that P&G's internal emails

28

1    conceded that P&G knew it was infringing Kraft's '443 patent,[1] and then P&G made not one, but

2    two, attempts to design around the patent.

3    • P&G repeatedly represents to this Court that discovery on the '419 patent has been

4    substantially completed, even going so far as to state that Kraft has taken the depositions of two of

5    the named '419 patent inventors. (Opp. at 8:17-9:1.) This, too, is a half truth. The parties

6    engaged in limited written discovery and document production concerning the '419 patent claim

7    before it was transferred to this Court. Once the case was transferred, all discovery on the '419

8    ceased. Contrary to P&G's shocking misrepresentation to this Court, the Kraft inventors deposed

9    in Wisconsin were deposed as percipient witnesses on Kraft's affirmative claim against P&G, not

10   on the '419 claim. P&G provides no testimony to this Court that it has produced to Kraft all

11   information in its possession concerning the '419 patent, because it knows it has not.

12   Given that the record so clearly exposes the truth behind P&G's trumped up allegations

13   against Kraft and its counsel, one must wonder: why trouble this Court with such false and

14   fabricated accusations? The answer is simple: P&G cannot explain to this Court how it will be

15   efficient to allow this lawsuit on the '419 patent case to go forward, when its sister patent is

16   undergoing reexamination proceedings before the PTO, the BPAI and the Federal Circuit. P&G's

17   opposition ignores the numerous overlapping claim terms in the '418 and '419 patents that Kraft

18   outlined for the Court in color in its brief. P&G knows that if the PTO, the BPAI and/or the

19   Federal Circuit finds the '418 patent claims invalid or otherwise applies the prior art to the '418

20   patent in the course of the reexamination proceedings, the scope of the intimately related and in

21   many cases identical '419 patent claim terms will necessarily be affected. Kraft provided facts

22   and case law to demonstrate this fact to the Court. P&G has no legitimate response to these facts

23   or legal authority. This case is properly stayed, and Kraft's motion should be granted.

24

25

26   [1] P&G also neglects to mention that the dismissal took place after Kraft was allowed to allege

27   willful infringement against P&G (over P&G's objections) in light of the undisputed fact that
     P&G knew of and discussed Kraft's patent for about a year before attempting any design around.

28

1

**Argument**

2

**I.    A STAY WOULD PROMOTE JUDICIAL EFFICIENCY**

3

    **A.    Absent A Stay, This Court And The Parties Will Engage In Wasted Claim Construction Efforts.**

4

5         P&G repeatedly emphasizes that the '419 patent is not in reexamination.  (See, e.g., Opp.

6    at 14:4-5.)  This point is not disputed, and it is irrelevant.  The Wisconsin court already found that

7    litigating the '419 claims separately from the '418 claims poses "a risk of inconsistent claim

8    construction and inconsistent judgments." (Pennypacker Decl., Ex. N at 10.)  This is because (as

9    P&G must admit) the '418 and '419 patents share the same provisional application, virtually

10    identical specifications, and largely identical claim language.  Despite these facts, P&G insists that

11    "this Court's claim constructions do not have to be 'consistent' with those reached in a

12    reexamination proceeding" because district courts and reexamination proceedings employ

13    different standards in construing terms.  (Opp. at 16:9-10.)  P&G misses the point.  The Federal

14    Circuit has repeatedly held that "the same term[s] and phrase[s] should be interpreted consistently

15    where it appears in claims of common ancestry." Epcon Gas Sys., Inc. v. Bauer Compressors,

16    Inc., 279 F.3d 1022, 1030 (Fed. Cir. 2002).  Thus, because of the admittedly close relationship

17    between the '418 and '419 patents, their many identical terms must be interpreted consistently

18    with one another.  When the BPAI and/or Federal Circuit interpret the terms in the '418

19    reexamination, this Court will be required to consistently interpret those same terms in the '419

20    patent.

21         Accordingly, contrary to P&G's suggestion (Opp. at 13:17-18), the effect of the '418

22    reexamination on this litigation is certain, not speculative, and the reexaminations of the '418

23    patent necessarily will affect — and possibly render moot or erroneous — the work this Court and

24    the parties undertake construing the '419 patent.  This is because so many of the claim terms in the

25    '419 patent are identical to terms that necessarily will be construed in the course of the '418

26    reexaminations.

27         P&G argues that "there is no reason to expect Kraft's reexaminations and appeals to result

28    in claim constructions." (Opp. at 16:3-4.)  However, the BPAI and Federal Circuit necessarily

1  must construe the claims in order to assess the validity of the '418 patent in light of the prior art.

2  Markman v. Westview Instruments, Inc., 52 F.3d 967, 996 n.7 (Fed. Cir. 1995) ("A claim must be

3  construed before determining its validity just as it is first construed before deciding

4  infringement."). Because the '419 patent shares such an overwhelming number of terms in

5  common with the '418 patent, the claim construction by the BPAI and/or Federal Circuit

6  necessarily will affect this Court's construction of those same terms over the same prior art. In

7  addition, the BPAI and/or Federal Circuit opinion(s) that issue from the '418 reexamination, as

8  well as P&G's submissions in the reexaminations, "are relevant prosecution history when

9  interpreting claims." E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430,

10  1439, (Fed. Cir. 1988); see also Nikken USA, Inc. v. Robinsons-May, Inc., 51 Fed.Appx. 874,

11  2002 WL 31664765 (Fed. Cir. Nov. 20, 2002) ("[S]tatements made during the prosecution history,

12  including reexamination proceedings, are relevant to determining claim scope.").

13       Absent a stay, this Court will be required to construe the '419 claim terms before the PTO,

14  BPAI and/or the Federal Circuit construe those same terms in the '418 reexaminations. If this

15  Court's interpretations differ, the efforts of this Court and the parties likely will have been wasted.

16  In its moving papers, Kraft provided this court with a matrix of thirty common phrases/terms in

17  the first few elements of the first two claims of the '418 and '419 patents. P&G does not even

18  offer a rebuttal to this matrix.

19       For example, each independent claim in both the '418 and '419 patents contains the

20  limitation "region of deflection." Kraft's '418 reexamination requests argue that the limitation

21  was known in the prior art. Regardless whether the BPAI and/or the Federal Circuit agree with

22  Kraft, their findings will be directly relevant to the work this Court must perform in this litigation,

23  because the construction of the term "regions of deflection" vis-a-vis the prior art will inform, if

24  not compel, this Court's construction of that same term over the same prior art.

25       Tellingly, P&G ultimately acknowledges the possibility that the '418 patent

26  reexaminations might invalidate the '419 claims, even after this Court and the parties invest

27  substantial resources in the claim construction process. (Opp. at 16:23-17:2) P&G's solution is to

28  suggest that the parties could correct the error on appeal to the Federal Circuit and then,

1   presumably, further litigate the claims here. (Id. ("In the event the PTO invalidates some or all of

2   the patents so as to contradict the jury's verdict, . . . the parties will be able to raise that issue with

3   the Federal Circuit on appeal.").) This proposed "solution" is a tacit acknowledgement of the very

4   real risk this Court faces of wasting time and effort construing claims prior to the conclusion of

5   pending reexaminations. Kraft's motion for stay should be granted.

6       **B.    P&G Ignores The Overwhelming Authority Favoring a Stay and Offers No Contrary Authority.**

7

8       P&G does not provide any authority holding that a stay should not be imposed whenever

9   the patent in litigation is different than the patent in reexamination, or even any authority in which

10   a court exercised its discretion and declined to impose a stay on that ground. On the other hand,

11   Kraft has extensive authority that when, as is the case here, plaintiff's patent is pending

12   reexamination, courts routinely stay independent infringement litigation based on <u>unexamined but</u>

13   <u>related patents</u>. See, e.g., <u>Pacesetter, Inc. v. Cardiac Pacemakers</u>, No. Civ. 02-1337, 2003 WL

14   23303473, at *3 (D.Minn. Nov. 19, 2003)[2]; <u>KLA-Tencor Corp. v. Nanometrics, Inc.</u>, No. C. 05-

15   03116, 2006 WL 708661, at *4 (N.D. Cal. Mar. 16, 2006); <u>Pegasus Development Corp. v. Directv,</u>

16   <u>Inc.</u>, No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at *3 (D.Del. May 14, 2003); <u>Datatreasury</u>

17   <u>Corp. v. Wells Fargo & Co.</u>, 490 F. Supp. 2d 749 (E.D. Tex. 2006).

18       P&G's only response to this authority is to argue that in all these cases, the patent in

19   reexamination also was asserted in the litigation. (Opp. at 18 n.10.) <u>In other words, P&G</u>

20   <u>concedes that litigation involving two or more patents, only one of which is involved in a</u>

21   <u>reexamination, is properly stayed</u>. P&G argues that the rule does not apply here because P&G has

22   alleged its '418 and '419 infringement claims in separate actions. P&G has not and cannot offer

23   any principled reason why it should avoid a stay simply because it chose to split its claims in this

24   manner. In other words, if this litigation were consolidated with the '418 litigation, P&G would

25

---

26     [2] P&G's only response to <u>Pacesetter</u> is to note that in that case, it was the plaintiff and not the

27   defendant who initiated the reexamination. (Opp. at 18:13-15.) P&G offers no explanation as to why that difference is a relevant distinction.

28

1  be forced to concede the propriety of a stay even of the '419 claim. There is no reason for a

2  different result simply because the two cases before the same Court have different captions.

3      P&G also cannot meaningfully distinguish Modine Mfg. Co. v. Delphi Automotive Sys.,

4  LLC, No. 00-C258, 2000 WL 33989247 (E.D. Wis. Dec. 8, 2000), in which the court stayed

5  patent litigation pending an appeal to the Federal Circuit of the rejection of a different but related

6  patent application.[3] The district court granted the stay motion because, as here, even though the

7  patent in litigation was not being considered by the Federal Circuit, the claims on appeal were

8  "strikingly similar in their wording, and the relevant illustrations [were] identical" to the patent at

9  issue. Id. at *1. Modine is dispositive here, especially in the face of P&G's lack of contrary

10  authority.

11      In the face of overwhelming authority that it cannot distinguish, P&G also argues that

12  Kraft's motion for a stay assumes that the reexamination of the '418 patent is likely to "succeed;"

13  i.e., invalidate the '418 patent. (Opp. at 13:20.) P&G conveniently ignores that the PTO, in

14  granting Kraft's ex parte reexamination request, already has found that the request raised a

15  "substantial new question of patentability" affecting each of the 55 claims of the '418 patent.

16  (Stern Decl., Ex. A.) P&G also ignores the fact that regardless of the final result of the '418 patent

17  reexaminations, this Court's work will be directly affected. Even if all the claims of the '418

18  patent are affirmed over the prior art, the BPAI and Federal Circuit construction of claim terms

19  will be instrumental in informing the work this Court must undertake. See, e.g., Spa Syspatronic,

20  2008 WL 1886020, at * 1 ("One major reason why stays pending reexamination are granted is that

21  whether or not the PTO ultimately amends or invalidates a patent's claims during reexamination,

22  the PTO's reexamination provides the Court with an expert funneling of the issues for trial.") In

23  Ethicon, Inc. v. Quigg, 849 F.2d 1422 (Fed. Cir. 1988), cited by P&G, the court held that "even if

24

_____

25  [3]  P&G's only response to this compelling authority is one sentence in a footnote, in which it
26  argues that the appeal in Modine was from a denial of an application, as opposed to Kraft's appeal
    of an affirmance of a patent. (Opp. at 18 n.10.) P&G presents no reason why this distinction
27  makes any difference; it was not discussed by the court as a relevant factor, and it does make no
    difference.
28

1    the reexamination did not lead to claim amendment or cancellation, it could still provide valuable

2    analysis to the district court . . . ."[4]

3         **C.    The Wisconsin Court Did Not Deny Kraft's Motion To Stay On The Merits.**

4         P&G repeatedly suggests that the Wisconsin court rejected on the merits Kraft's motion to

5    stay the '419 litigation. (See Opp. at 2:10-11, 8:3-10.) This is false. Kraft moved to stay the '419

6    litigation, or, in the alternative to transfer the claims to this district so that this Court could rule on

7    the propriety of a stay. The Wisconsin court granted Kraft's motion to transfer for just that reason.

8    Critically, the court never ruled on the merits of the stay itself as P&G suggests. Instead, the court

9    declined to issue a stay without a transfer precisely because it agreed with Kraft that the '418 and

10   '419 patents should be litigated together and therefore it did not want the '419 case pending in

11   Wisconsin, after the '443 case was resolved, while the prior-filed '418 case remained pending in

12   California. (Pennypacker Decl., Ex. L at 5 (denying stay because "[h]aving P&G's infringement

13   claim pending here and in California serves no purpose").)

14        The remainder of the Wisconsin court's order, severing and transferring P&G's '419

15   claims to this Court, clearly endorsed Kraft's view that the '419 claim should be litigated along

16   with the '418 claim. There is no support for P&G's suggestion that the Wisconsin court held that

17   the '419 case should not be stayed but should instead proceed even in the face of the '418 stay.

18   **II.    P&G WILL NOT BE PREJUDICED BY A STAY**

19        P&G appears to argue that it will be prejudiced by a stay because (1) some discovery on

20   the '419 patent claim has already been taken in Wisconsin and can be used in this Court, (2) its

21   patent infringement claim will be delayed, (3) it will lose customers, and (4) it might suffer some

22   undefined litigation prejudice. There is no support for any of these arguments, and Kraft's stay

23   should be granted.

24   _____

25       [4] P&G ignores this authority and states: "the expertise and opinion of the PTO on the

26   pending reexamination is irrelevant here" because the *inter partes* reexamination is now pending
     at the BPAI, not the PTO. (Opp. at 18:1-2.) Of course, the *inter partes* procedure has a statutorily

27   built-in appellate process. There is no authority for P&G's suggestion that the appeals process
     should be disregarded in favor of the PTO's initial decision.

28

**A.    The Limited Discovery Conducted Does Not Warrant Denying the Stay.**

P&G argues that "whether discovery is complete" (it is not), and "whether a trial date has been set" (it has not), "are relevant factors in evaluating [a] request for a stay." (Opp. at 9.) P&G then mischaracterizes the record to suggest that the status of discovery weighs against a stay.

P&G mischaracterizes the amount of '419 patent discovery the parties conducted in Wisconsin. P&G points to the number of documents the parties exchanged and the amount of written discovery exchanged, but P&G fails to inform the Court how much of that discovery pertained only to the '443 litigation. (Opp. at 8.) The vast majority of discovery conducted, in fact, related to the '443 patent claims. P&G admits that the '419 discovery conducted in Wisconsin is "much narrower" than the discovery that is relevant here, and that much additional discovery remains. (Opp. at 13:5-10.)

P&G also notes that Kraft took the depositions of two inventors of the '419 patent. (Opp. at 8-9.) P&G glosses over the fact that those depositions were taken after the '419 case was transferred to this district, and that Kraft diligently refrained from asking questions designed to elicit '418/'419 discovery. (Stern Decl. ¶5.) In fact, following the transfer of the '419 case to this district, the Wisconsin court issued an order expressly prohibiting the parties from using the '443 litigation to obtain '418/'419 discovery. (Stern Decl., Ex. B.) In sum, the discovery obtained following the transfer, including all the depositions taken, was limited to only the '443 case.

In any event, P&G does not and cannot explain how any discovery conducted on the '419 case while it was pending in Wisconsin would be "wasted" if this Court were to impose a stay. As P&G admits, whatever discovery P&G took in Wisconsin can be used in this litigation when the stay is lifted. P&G's emphasis on the discovery conducted in Wisconsin is irrelevant in light of this fundamental fact.

P&G also admits, as it must, that Kraft cited numerous cases in which a stay was imposed notwithstanding the very advanced state of discovery. (Opp. at 9 n.4.) P&G's only response is to argue that the most frequent reason given for denying a stay is the late stage of discovery. (Id.) P&G's logic is faulty. Even if every denial of a stay was based on the advanced stage of discovery, that says nothing about the number of cases in which a stay was imposed

1    notwithstanding the late stage of discovery.  Moreover, discovery on P&G's '419 patent claim is

2    not in a very advanced stage, and the limited written discovery taken in Wisconsin is no

3    impediment to a stay here.

4         P&G suggests that the case management deadlines that were in place prior to transfer

5    remain in effect and that Kraft and this Court may not "ignore" that prior scheduling order.  (Opp.

6    at 10.)  This Court previously rejected this argument, holding that "[a]ny schedule entered in the

7    Western District of Wisconsin, clearly does not control the litigation now that it has been

8    transferred to this district."  (Order dated March 11, 2008.)  An obsolete scheduling order from

9    another district is not relevant to whether a stay is appropriate in this action in which no claim

10   construction hearing, let alone trial date, has been set.  P&G's discovery and case schedule

11   arguments fail, and Kraft's stay motion should be granted.

12        **B.    P&G Has Demonstrated No Prejudice Through Delay.**

13        P&G argues that a stay would run counter to the purpose of the transfer to this district

14   because a stay would result in what P&G terms "delay." (Opp. at 9-10.)  This argument is

15   meritless.  The purpose of a transfer – even according to P&G's cited case, <u>Van Dusen v. Barrack</u>,

16   376 U.S. 612, 616 (1964), is to avoid "waste," not merely "delay."  <u>Van Dusen</u> contains no

17   discussion of preventing "delay" in the context of a 1404(a) transfer or otherwise.  This distinction

18   between "delay" and "waste" is critical.  Resolving two actions simultaneously over the course of

19   two to three years is a superior use of resources when compared to resolving two duplicative

20   actions seriatim, with duplicative discovery, wasted case management and claim construction, etc.,

21   over the course of eighteen months.[5]

22        P&G argues about the effect of delayed resolution of its infringement claims.  (Opp. at 9:9-

23   10:18.)  P&G not only made those arguments to this Court, which correctly rejected them; it also

24   _____

25        [5]  P&G cites <u>Spa Syspatronic, AG v. Verifone Inc.</u>, 2008 WL 1886020, at *2 (E.D. Tex. Apr.
     25, 2008), for the proposition that a stay should not be granted where a party unduly delays
26   reexamination.  Here, Kraft initiated the *inter partes* reexamination the very next day after the
     '418 patent issued and well before P&G filed its complaint; in <u>Spa Syspatronic</u>, the defendant
27        (footnote continued)

28

1    pressed those arguments on appeal to the Federal Circuit, which apparently declined to credit

2    P&G's protestations of irreparable harm or to issue any expedited remand.  Remarkably, although

3    P&G demands urgency here, P&G has done nothing to expedite its appeal of this Court's staying

4    of the '418 litigation.  In fact, the Federal Circuit has for the last five months essentially avoided

5    moving P&G's appeal forward because, since the parties' ended their mediation efforts, P&G has

6    done <u>absolutely nothing</u> to move the appeal to disposition.  (Stern Decl. ¶7.)

7         Moreover, the Wisconsin court already considered, and rejected, P&G's argument that a

8    transfer would result in undue delay.  As that court found, P&G provided no evidence "why

9    docket speed is necessary in this case . . . .  P&G has failed to provide reasoning which supports

10   giving much weight to the speedy trial factor." (Pennypacker Decl., Ex. L at 8-9.)[6]  As explained

11   above, the Wisconsin court expressly held that, regardless of the time it might take, judicial

12   economy requires that the '419 infringement claims should be litigated together with the '418

13   infringement claims.

14        Without any facts or case law to support it, P&G tries to prove prejudice by contradicting

15   information it provided this Court last October.  When this Court considered the stay of the '418

16   case and asked P&G how much delay would be occasioned by the reexamination of the '418

17   patent, P&G affirmatively represented that the *inter partes* proceeding could take *two or three*

18   years to complete.  (Davidson Decl., Ex. 4 at 25:17-18.)  Now, after having lost the stay motion in

19   the '418 case, P&G dredges up a different set of statistics, and argues that the reexaminations

20   could take *five to eight* years.[7]  Putting aside the fact that P&G will now advance any set of

21   statistics that support its cause, what P&G continues to ignore is that this Court's claim

22   _____

23   filed for reexamination five months <u>after</u> the plaintiff filed its complaint.  In any event, the court in
     Spa Syspatronic granted the stay pending reexamination.

24   [6]  Adams v. Newell Rubbermaid Inc., 2007 U.S. Dist. LEXIS 625212 (W.D. Wis. Aug. 21,
     2007), does not hold that prompt resolution is especially important for competitors.  Adams

25   addressed a motion to transfer, and considered the necessity of a speedy resolution in that context.

26   The court never held or even suggested that prompt resolution is especially important when a
     company is seeking to enforce its patent rights against a competitor.

27   [7]  Kraft objects to Exhibit 10 of the Davidson declaration on grounds of hearsay.  The exhibit
     cannot be considered for the truth of its assertions.  Fed. R. Evid. 802.

28

1   construction, infringement and validity decisions can be undone, in whole or in part, when the

2   reexaminations conclude.  For example, a finding that the '419 patent is valid and infringed could

3   easily be undone if the BPAI and/or Federal Circuit find that prior art renders the '418 patent

4   obvious and invalid (and, by implication, the '419 patent is rendered invalid on the same grounds).

5   **C.    P&G Presented No Evidence That a Stay Would Cause P&G Any Harm That**
         **Could Not Be Adequately Compensated, If Necessary, With Money Damages.**
6

7       P&G again recycles its long-discredited arguments that money damages will be inadequate

8   to remedy any ultimate finding of infringement.  This Court declined to let those arguments

9   dissuade it from imposing a stay of the '418 litigation, the Wisconsin court declined to let those

10  arguments dissuade it from transferring the '419 action to this district, and the Federal Circuit thus

11  far has declined to heed those same arguments when P&G presented them on appeal.  P&G

12  apparently hopes that the fourth time will be a charm.

13      However, P&G's argument gets weaker with every retelling.  This time, P&G does not

14  even pretend to offer evidence in support.  P&G has not moved for a preliminary injunction,

15  disproving that P&G truly believes it is being irreparably harmed by Kraft's sales.  P&G offers no

16  declarations, no documents, and no evidence of any kind to support its argument that its business

17  will be harmed by a stay.  Even the conclusory, equivocal, self-serving declarations that P&G had

18  relied on in the '418 litigation were superior to P&G's *ipse dixit* here.

19      The passage of time should have had the effect of strengthening P&G's evidence, not

20  eliminating it.  P&G defended its scant evidence in the '418 case by complaining that Kraft's

21  product was newly on the market and that, in essence, the data supporting P&G's speculation of

22  lost market share was not yet available.  Now, however, Kraft's product has been on the market

23  for nearly one year, and P&G does not even pretend to offer any evidence of lost market share.

24  P&G offers no survey, economic or other expert testimony of any kind regarding alleged business

25  harm.  There simply is no such evidence.

26      P&G does not and cannot explain why money damages would not be adequate to

27  compensate P&G for any alleged business harm it would suffer in the face of a stay.  Neither

28  Polymer Tech. v. Bridwell, 103 F. 3d 970,975-76 (Fed. Cir. 1996), nor any other case, holds that

1   money damages are never adequate and that any stay inevitably causes prejudice in the form of

2   lost market share.  If P&G were correct, no court should ever impose a stay in a patent case

3   because doing so would cause "business prejudice" while the alleged infringer continues to sell

4   products during the stay.  See Nutrition 21 v. United States, 930 F.2d 867 (Fed. Cir. 1991)

5   ("[R]eliance on possible market share loss would apply in every patent case where the patentee

6   practices the invention.").  P&G offers no reason why it would be more prejudiced by a stay than

7   any other litigant whose case is stayed, and its argument to the contrary should be treated

8   accordingly.

9          Notably, the Wisconsin court considered these exact arguments of P&G (except that it had

10  P&G's declarations, which are absent here) and rejected them, expressly finding that P&G had

11  submitted no evidence to show that it could not be compensated through money damages.

12  (Pennypacker Decl., Ex. L at p.9 ("P&G does not explain why it could not be readily compensated

13  by a reasonable royalty.").)

14         Kraft also formerly provided this Court with evidence that P&G was publicizing incredible

15  market success — notwithstanding Kraft's introduction of the product that P&G alleges is

16  infringing — to P&G investors.  (Stern Decl., Ex. C.)  This likely explains why P&G declines to

17  present any evidence of business prejudice.  P&G is trying to have it both ways, acknowledging to

18  the market its success while attempting to imply, without offering any evidence, that Kraft's

19  product would cause it economic harm.  Kraft's motion to stay should be granted.

20         **D.     P&G Presented No Evidence That It Is Likely To Lose Evidence As A Result**

21              **Of A Stay.**

22         P&G's allegation that it might suffer evidentiary prejudice is constructed from whole cloth

23  without a shred of evidentiary support.  P&G fares little better on the law, as the best it can muster

24  is to quote an unpublished case that says nothing more than if there is a lengthy delay, evidence

25  "could" be lost and witnesses' memories "could" fade.  (Opp at 12:25-13.)  But what evidence is

26  P&G afraid will be lost?  Proof of the features or elements of Kraft's package?  This information

27  can readily be testified to by any P&G expert who examines the package.  Proof of Kraft's

28  revenues from sales of the allegedly infringing package?  Kraft is a public company, and retains

1    this sort of financial information, just as P&G does. P&G presents no specific area where it is

2    concerned there will be a loss of evidence (or memory), and in reality has no reason to suspect that

3    would occur here. Kraft did not begin selling the allegedly infringing products until June or July

4    2007; P&G initiated litigation in August 2007 and Kraft immediately imposed a litigation hold.

5         P&G's only evidence suggesting why it might fear the loss of evidence is to point to a

6    deposition transcript in which a Kraft witness could not recall the answer to some questions,

7    unrelated to anything having to do with the '419 patent case. (See Davidson Decl., Ex. 8.) Of

8    course, this is virtually certain to occur at some point in virtually every deposition in virtually

9    every case, and P&G does not and cannot suggest that the witnesses in this matter are especially

10   likely to forget any important details. Moreover, P&G makes no proffer as to the substance of

11   testimony that it believes would be subject to being lost. P&G is the party that possesses the

12   evidence about P&G's invention; Kraft's evidence presumably pertains mostly to its allegedly

13   infringing products, which only have been on the market for approximately one year.

14        In sum, P&G has no evidence that it will suffer evidentiary prejudice, and P&G is left with

15   no reason why a stay would cause it any harm for which it could not be easily compensated should

16   Kraft later be found to have infringed P&G's patents. Kraft's stay motion should be granted.

17   **III.    A STAY NEED NOT BE LIMITED TO AVOID PREJUDICE TO P&G.**

18        **A.    A Stay Should Not Be Conditioned On Allowing P&G Discovery.**

19        P&G's request for "limited deposition discovery" is unwarranted because it assumes that

20   P&G has established that it is likely to suffer evidentiary prejudice during a stay. As noted above,

21   P&G has presented no evidence supporting that speculation. Moreover, the discovery that P&G

22   requests is anything but "limited." (See Opp. at 24:1-8.) P&G's request would obviate many of

23   the reasons for a stay: preserving the resources of the parties and the Court pending a final

24   decision in the reexaminations. For example, if the '418 patent is found to be invalid by virtue of

25   claim constructions that necessarily render the '419 patent invalid for the same reasons, the

26   discovery that P&G is requesting will have been unnecessary and wasteful. In addition, once

27   reexamination proceedings are completed, the parties will have new evidence of the scope and

28   meanings of claim terms, which will very likely alter the focus of discovery in this case. One can

1  imagine that P&G will then want additional depositions and written discovery to question Kraft
2  witnesses on the new evidence.  Again, P&G's suggested approach is wasteful and unnecessary.
3  Kraft has employed a litigation hold since it was sued in August 2007, and there is no reason to
4  suspect that further evidentiary protections are necessary.

5  **B.    The Stay Should Not Be Limited To The Duration Of The *Ex Parte*
6     Reexamination.**

7         Ultimately recognizing that a stay may be inevitable, P&G makes a last-ditch request that
8  any stay be limited to the pendency of the *ex parte* reexamination.  There is no reason to disregard
9  the *inter partes* reexamination and stay this action only during the pendency of the *ex parte*
10  reexamination.  The two reexaminations are considering different evidence, and the same above-
11  described claim construction and other inefficiencies will result if the parties begin litigating
12  P&G's '419 patent claim before the *inter partes* reexamination is complete.
13         P&G's argument is based on its assertion that "[g]iven the affirmance of all 55 claims of
14  the '418 Patent in the first [pending, *inter partes*] reexamination, it is highly unlikely that Kraft's
15  second bite at the reexamination apple will succeed."  This ignores that the PTO granted the *ex*
16  *parte* reexamination request because it found that it raised a substantial new question of
17  patentability with respect to all 55 claims in the '418 patent, and ignores that, as explained above,
18  likelihood of success in the reexaminations is irrelevant to whether the litigation should be stayed
19  pending the reexamination outcome.  No efficiency is gained for this Court by limiting a stay to
20  the duration of the *ex parte* reexamination.  Kraft's motion should be granted and this case stayed
21  until both reexaminations of the '418 patent are completed.

22                                  **Conclusion**

23         For all the foregoing reasons, defendant Kraft Foods Global, Inc., requests that this Court
24  stay this litigation pending resolution of the reexaminations of the '418 patent and the resumption
25  of the '418 litigation pending in this Court.
26  / / /
27  / / /
28  / / /

DATED:  June 16, 2008

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP


By  //s// Claude M. Stern
    Claude M. Stern
    Evette D. Pennypacker
    Attorneys for Kraft Foods Global, Inc.

1

## CERTIFICATE OF SERVICE

2      I am employed in the County of San Mateo, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 555 Twin Dolphin
3  Drive, Suite 560, Redwood Shores, California 94065-2139.

4      On June 16, 2008, I served and had served true copies of the document(s) described as:

5  **KRAFT FOODS GLOBAL, INC.'S REPLY IN SUPPORT OF MOTION FOR STAY**

6  **DECLARATION OF CLAUDE M. STERN**

7      on the parties in this action as follows:

8  **BY ELECTRONIC MAIL TRANSMISSION:**  By electronic mail transmission from
tomwallerstein@quinnemanuel.com on June 16, 2008, by transmitting a PDF format copy of such
9  document(s) to each such person identified below, at the e-mail address listed below their
address(es).  The document(s) was/were transmitted by electronic transmission and such
10  transmission was reported as complete and without error.

11      **William Rooklidge**
    **Martha Gooding**
12      4 Park Plaza, Suite 1700
    Irvine, CA 92614
13      RooklidgeW@howrey.com
    GoodingM@howrey.com
14
      I declare under penalty of perjury under the laws of the State of California that the
15  foregoing is true and correct.

16      Executed on June 16, 2008, at Redwood Shores, California.

17

18

19      Thomas E. Wallerstein

20

21

22

23

24

25

26

27

28